# JACOB H. SNYDER

*vs.*

## JESSE O. SNYDER, Executor.

*Probate of Will—Affidavits—Notice—Amended Petition—
Effect on Original.*

Non-compliance with the provision of Code, art. 93, sec. 347, that every executor or other person exhibiting a will shall be examined on oath as to the manner in which the will or codicil exhibited came into his hands, does not invalidate the probate, when the orphans' court has received from other sources evidence that the will is genuine and executed in compliance with all the requirements of the law by a qualified person, and properly attested.              pp. 294-296

The probate of a will is not invalid because the subscribing witnesses, after stating that it was executed and attested as required by law, and that the testator was of sound and disposing mind, memory and understanding, did not add that he was capable of executing a valid deed or contract.      p. 296

Allegations of fraud in procuring a will, while material in the trial of a caveat to the will, have no relevance in a proceeding to revoke a probate for fraud, which must be based on the ground that it, and not the will, was procured by fraud.

p. 297

That the executor failed to notify testator's brother as to when he would probate the will, does not show fraud in the probate of the will, it appearing that the executor notified two sisters of the appellant, one of whom was present at the probate.                                      p. 297

That the executor of the will, in presenting it for probate, failed to tell the register of wills of a deed of trust made by testator to such executor, and of litigation in regard thereto then pending, did not show fraud in the probate.      p. 297

Charges of fraud unsupported by facts will not be recognized by courts of justice.                            p. 297

Where, after the filing of a petition in the orphans' court in the nature of a caveat, asking that the probate of the will be set aside and that issues be transmitted to a court of law, the petitioner filed "an amended petition" praying a rescission of the probate, *held* that it was error to dismiss the original petition, since if it was still part of the case the court had no authority to do so, and if it was out of the case, the court had no power to do so.                    p. 298

The amended petition having been treated by both court and litigants as a substitute for the original petition, and the principal questions presented by the original petition not having been considered on the hearing of the amended petition, the court had not the power, and could not have intended, in disposing of the amended petition, to dispose also of the right of the petitioner or any other person to caveat the will.      p. 298

In view of the uncertainty produced by the reference to the original petition, in an order of the orphans' court appealed from, dismissing an amended petition, *held* that the case should be remanded in order that all reference to the original petition be stricken from the order appealed from.                    p. 299

*Decided January 10th, 1923.*

Appeal from the Orphans' Court of Washington County.

Petition by Jacob H. Snyder against Jesse O. Snyder, executor of Abraham K. Snyder, deceased, to set aside the probate of a will. From an order dismissing the petition, petitioner appeals. Order affirmed in part.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Leo Weinberg* and *Charles S. Baker,* with whom was *Wilton J. Lambert* on the brief, for the appellant.

*Albert J. Long,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Abraham K. Snyder, a resident of Washington County, in this State, died on January 1, 1922, leaving as his only heirs at law his brother, Jacob H. Snyder and two sisters, Mary Hughes and Malinda Summers, all residing in the same county. On January 4th, 1922, Jesse O. Snyder, also of Washington County, but who was not a relative of the decedent, produced, in the orphans' court of that county, a paper purporting to be the will of Abraham K. Snyder in which he was named executor, and made oath as follows: "That the aforegoing is the true and whole will of said deceased that has come to his hands and possession, and that he does not know nor has he heard of any other." On the same day, which was in the recess of the court, the subscribing witnesses to the will appeared before the register of wills and made oath "that they did see the testator sign and seal said will; that they heard him publish, pronounce and declare the same to be his last will and testament; that at the time of his so doing he was to the best of their apprehension of sound and disposing mind, memory and understanding and that they subscribed their names as witnesses to said will at the request and in the presence of the said testator and in the presence of each other." Whereupon the will was admitted to probate by the register of wills in the presence of the executor and Mrs. Mary Hughes, a sister of the decedent, and at some time thereafter letters testamentary were issued to Jesse O. Snyder, the appellee.

On March 24th, 1922, Jacob H. Snyder filed in the same court a petition in the nature of a caveat to the supposed will, in which he asked that the probate of the will be set aside, that issues be framed on the pleadings and transmitted to a court of law for trial, and that an administrator *pendente lite* be appointed to administer the estate pending the caveat. Answers and the general replication having been filed, the matter proceeded to a hearing. In the course of the hearing, on May 1st, 1922, the petitioner filed "an amended petition"

in which he charged that the decedent was for some time prior
to his death mentally deficient and that he had been paralyzed
and that he was, on May 26th, 1921, in the Circuit Court for
Prince George's County adjudged to be of unsound mind, and
a committee appointed for the care of his person and estate;
that on January 29th, 1920, when the decedent was so "men-
tally unbalanced," Jesse O. Snyder procured from him a
deed in which he conveyed to the said Jesse O. Snyder his
entire estate valued at about $135,000, in trust for the
grantor during his life and then for the use of such persons as
the grantor should by will appoint and, failing such appoint-
ment, to the grantor's right heirs; that Jesse O. Snyder was
an attorney who lived and practiced law in Hagerstown, and
that for twenty-five years he was the confidential agent, at-
torney and advisor of the decedent; that when the decedent's
committee learned of that deed they brought suit against
Jesse O. Snyder to have it annulled, and that suit was pend-
ing at the time Jesse O. Snyder, the executor named in the
will, offered it for probate, and that he under that will took
practically the whole estate; that Jesse O. Snyder procured
the will to be probated in the presence of the two sisters of
the decedent, but did not notify the appellant, his only sur-
viving brother; that the appellee did not inform the register
of wills of the suit brought to annul the deed of trust, nor of
the fact that he was then administering the estate under that
deed; that the will was prepared by the appellee and that it
was probated at his request and letters testamentary issued
to him.   The petition then asks for this relief: "Wherefore,
your petitioner prays that the order admitting to probate said
paper writing, purporting to be the last will and testament
of Abraham K. Snyder, deceased, be rescinded and that the
letters testamentary granted herein be revoked and that an
administrator *pendente lite* be appointed."   An answer to the
amended petition was filed by the appellee, to which the ap-
pellant filed the general replication.   The case was heard,
testimony taken, and on June 20th, 1922, the following order

was passed: "It is therefore ordered this 20th day of June, A. D. 1922, by the Orphans' Court of Washington County, that the petitions of Jacob H. Snyder, filed March 24th, 1922, and May 1st, 1922, be and they are hereby dismissed." From that order this appeal was taken.

The record contains sixty-six pages, but all the facts which can have any possible relevancy to the question before us can be stated in a few words. The nearest surviving relatives of the decedent were his two sisters and his brother. He left a paper writing purporting to be his last will and testament, dated July 26, 1902, in which he named Jesse O. Snyder as his executor. Snyder offered the paper for probate and made the oath referred to above. The subscribing witnesses also appeared and each took an oath in the form previously given. At that time one of the decedent's sisters was present and his other sister had heard the will read. Jacob H. Snyder, the brother, had not been notified and was not present. After the will had been proved in the way we have stated, it was admitted to probate, and the question before us is whether, upon these facts, the order admitting it to probate should be rescinded and the grant of letters testamentary revoked.

The appellant offers several objections to the probate which may be thus summarized: (1) that the oaths taken by the executor and the attesting witnesses did not gratify the requirements of the statutes applicable in such cases; (2) because the probate was procured by fraud.

Taking these objections in their order we will first consider the form of the affidavits in question. Section 347, article 93, Code Pub. Gen. Laws of Maryland, provides: "Every executor or other person exhibiting a will shall be examined on oath whether or not he knows of any other will or codicil and in what manner the will or codicil exhibited came into his hands." The executor when he exhibited the will was not examined on oath as to how it came into his possession. It is urged that this omission invalidated the

probate. The effect of such an omission does not appear to
have been passed upon by this Court and we must deal with
the question as one of first impression. The evidence de-
manded by the statute is directed to two points, one of which
relates to the question as to whether the will exhibited is the
last will of the testator, and the other to its custody. The
first point is jurisdictional to this extent, that before a will
can be admitted to probate the court must be satisfied that it
is the last will of the testator, for otherwise it could not be
admitted to probate at all, but the failure of the register of
wills to examine the person exhibiting the will in the manner
provided by the statute, if the court has secured the infor-
mation from other sources, would not, in our opinion, affect
the validity of the probate. There is nothing in this section
to indicate that a literal compliance with its terms was in-
tended to be a condition precedent to vesting the court with
the jurisdiction to admit wills to probate. It imposes upon
the probate court the positive duty of examining any person
exhibiting a will as to the existence of any other will or
codicil, and as to how it came into his possession, but can it
be said that if, notwithstanding the imperative language of
the law, the probate officer neglects or in any way fails to so
examine the person exhibiting the will, that *ipso facto* it be-
comes ineligible for probate at all, even though the court
received from other sources evidence showing that the will
was genuine and executed in compliance with all the re-
quirements of the law by a qualified person, and properly at-
tested? We think not, for the mere statement of such a propo-
sition destroys it. The statute does not expressly or by neces-
sary implication make the probate of wills depend upon the
performance of that duty, for when it prescribes in section
322 what qualifications are essential to enable a person to
execute a good and effectual will, and, in section 323, the
manner and form in which a valid will must be made, exe-
cuted and attested, it states every condition, compliance with
which is essential to a valid will, and when in section 350 it

provides that "in proving a will or codicil, all the witnesses thereto shall be examined" when they can be reached, and in section 353 it provides for the proof of their signatures in the event that their presence cannot be had and fixes the weight and effect of such proof, it prescribes every condition essential to the regular probate of a valid will. The intent of this provision was no doubt to empower the probate officer to test the *bona fides* of the persons offering the will in applying for probate, and to ascertain whether the will offered was the last will of the testator, but it did not intend that the failure of the probate officer to so examine the person producing the will should invalidate its subsequent probate, because, in addition to what has already been said, if the will were in all other respects valid, the fact that the person producing it to the court had obtained it wrongfully would be wholly immaterial to any consideration of the right of persons interested to have the will probated. We do not think therefore that the failure of the register of wills to examine the executor as to how the will came into his possession affected the validity of the probate.

We will now consider the form of the oath taken by the subscribing witnesses. It is contended that it is defective because the witnesses, after stating that it was executed and attested as required by law, and that the testator was "of sound and disposing mind, memory and understanding," did not add that he was capable of executing a valid deed or contract. But the statute does not require that such witnesses shall be examined as to the testator's mental condition, nor does it indeed in any way limit or direct their examination, but merely provides that, in "proving a will," they "shall be examined." Clearly their examination, especially at a time when there is no contest as to the mental condition of the testator, is not necessary, since, in the absence of proof to the contrary, every testator will be presumed to be of sound and disposing mind and capable of executing a valid deed or contract. Further discussion of this point would be needless,

and indeed superfluous, in view of the recent decisions of this Court. *Woodstock College* v. *Hankey,* 129 Md. 675, &c., and *Parker* v. *Leighton,* 131 Md. 412. In the latter case we approved an affidavit in the very form to which the appellant objects.

The next objection is that the probate was procured by fraud. But there is no evidence that there was fraud in obtaining the probate. The allegations of the petition do charge gross fraud in procuring the will, and testimony was offered to support them, but while such charges, if true, would be material in the trial of a caveat to the will, they have no relevance in a proceeding to revoke a probate for fraud, which must be based on the ground that it, not the will, was procured by fraud.

Now when we come to examine the facts of this case, the facts relied on to show fraud in obtaining the probate are without any real significance or force. Reduced to their lowest terms those facts are that the executor did not notify the decedent's brother when he would probate the will, and that he did not tell the register of wills of the execution of the deed of trust, nor of the litigation then pending in connection with it.

In regard to these objections it is sufficient to say that it was not incumbent upon the executor to notify all of the relatives and next of kin of the testator, and the fact that he failed to notify the brother, with whom he does not appear to have been on good terms, cannot be taken as proof of fraud, when it appears that he notified the appellant's two sisters and that one of them was present when the will was probated. Nor is there any apparent reason why the failure of the executor to tell the register of wills of the deed of trust or of the litigation relating to it should be regarded as proof of fraud. Those facts could not possibly have affected the register's official acts. They did not in themselves make it improper to probate the will, nor did they, if true, make the executor named in the will ineligible. Charges of fraud

unsupported by facts will not be recognized by courts of justice. Charges without facts are mere vituperation. *Miller's Equity,* sec. 93. There was therefore, in our opinion, no error in so much of the order appealed from as related to the amended petition.

But the order also dismissed the petition filed March 24th, 1922. Obviously the court had no power to dismiss that petition if it remained part of the pleadings in the case, because it was a valid and sufficient caveat to the will. An amended bill may under certain circumstances operate as a substitute for an original bill (*Wagoner* v. *Wagoner,* 77 Md. 193), and be dealt with as such (*Carter* v. *First Nat. Bank of Pocohontas,* 128 Md. 586), but the rule generally recognized has been thus stated: "An amended bill is considered as an original bill, or rather as a continuation of the original, and with the original constitutes but a single bill and one record. The averments of the original and amended bills and the prayers of both will be taken together." Where, however, the amendment is of such a character as to entirely supersede the original bill, the latter cannot be treated as remaining in the case. Just why the court therefore undertook to dismiss the petition of March 24, 1922, is not clear. If it was still part of the case it had no authority to dismiss it, and if it was out of the case, it had no power to dismiss it. In either case there was error in so much of the order as dealt with the order of March 24, 1922. But as the amended petition was treated by both court and litigants as a substitute for the original petition, and since the principal questions presented by the original petition were not even considered at the hearing on the amended petition, the court had not the power and cannot have intended, in disposing of the amended petition, to dispose also of the right of the appellant or any other person to caveat the will referred to on any grounds, and so much of the order appealed from as referred to the petition of March 24, 1922, must have been adopted under the mistaken impression that it was a part of the description of the amended

petition.   Because of the uncertainty caused by the reference
to the original petition, it will be necessary to remand this
case in order that all reference to the original petition may
be stricken from the order appealed from.     .

   In view of the conclusions reached it becomes unnecessary
for us to inquire as to whether the petition was filed too late
to obtain the relief prayed.

> *So much of the order appealed from as dismisses
> the petition of May 1st, 1922, affirmed, and
> cause remanded, in order that so much of
> said order as refers to the petition of March
> 24th, 1922, may be stricken out.   The costs
> to be paid by the appellant.*