## ELVA B. SNYDER *v.* AUGUSTA M. CEARFOSS
### (Two Cases)

[No. 118, October Term, 1945.]

*Decided April 16, 1946.*

The Cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Douglas H. Gordon* and *W. Clinton McSherry*, with whom was *Ellsworth R. Roulette* on the brief, for the appellant.

*Walter E. Sinn* and *Parsons Newman* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal involves two cases. In the first, Elva B. Snyder, as administratrix of the estate of her mother,

Malinda Summers, sued the surviving executrix of the estate of Jesse O. Snyder for one-third of the amount Jesse O. Snyder received from the estate of Abraham K. Snyder in 1922. In the second, Elva B. Snyder, as administratrix of the estate of her mother's sister, Mary A. Hughes, sued the same defendant for another third of what Jesse O. Snyder received from the estate of Abraham K. Snyder. Abraham K. Snyder was the brother of Mrs. Summers and Mrs. Hughes, but was not related to Jesse O. Snyder, the draftsman and principal beneficiary of the will. Each suit was based upon an alleged promise by Jesse O. Snyder that he would give to Mrs. Summers and Mrs. Hughes, respectively, one-third of the amount he received from their brother's estate, provided they would not join with their brother, Jacob H. Snyder, in an attack upon the will of Abraham K. Snyder.

It appears that Jesse O. Snyder, in the capacity of financial adviser and attorney, handled all of the business transactions of Abraham K. Snyder for at least twenty-five years prior to his death. Jesse O. Snyder was a practicing attorney, with law offices in Hagerstown and Clear Spring, and the president of two banks. He and his two brothers, Charles and W. Firey, also conducted a general store at Clear Spring. W. Firey Snyder married Elva B. Snyder, the plaintiff, who was the niece of Abraham K. Snyder, and the residuary legatee under the will of her aunt Mrs. Hughes, and the only heir at law of her mother, Mrs. Summers.

The will of Abraham K. Snyder was executed July 26, 1902. The residuary estate was left to Jesse O. Snyder. Upon the death of Abraham K. Snyder, on January 1, 1922, the balance distributed to Jesse O. Snyder was $88,564.85. Some time in the year 1919, Abraham K. Snyder suffered a stroke, and was thereafter admitted to the Laurel Sanitarium. On January 29, 1920, he executed a deed of trust to Jesse O. Snyder, to be administered in the Circuit Court for Washington County, in which the settlor was to be the beneficiary for life, the

remainder to pass in accordance with the terms of his will. On May 26, 1921, Abraham K. Snyder was adjudicated a lunatic, the court appointing Henry F. Wingert and Frederick H. Snyder (a son of Jacob H. Snyder) as committee. The committee thereupon brought a bill in equity to set aside the deed of trust. Upon the death of Abraham K. Snyder, this bill was dismissed. On March 24, 1922, Jacob H. Snyder filed a caveat to the will of his brother, and by a supplemental petition to the orphans' court, sought to strike down the probate on the grounds of surprise and fraud. On appeal to this court the probate was sustained. *Snyder v. Snyder,* 142 Md. 290, 120 A. 710. The caveat was subsequently dismissed. Neither Mrs. Summers nor Mrs. Hughes opposed the probate of the will; in fact, Mrs. Hughes testified before the orphans' court that she did not contest her brother's right to do what he pleased with his estate. *Record, Id.,* 142 Md. 290, 120 A. 710. Apparently she was incensed at the part taken by her brother and his son in having Abraham adjudicated a lunatic. A statement to this effect is found in the will of Mrs. Hughes.

In the trial below, a number of witnesses testified to certain promises made by Jesse O. Snyder to Mrs. Summers and Mrs. Hughes, the first occasion being on the date of the funeral of Abraham in 1922, when the will was read to them. Mrs. Hughes died on September 4, 1932, and Mrs. Summers on November 16, 1933. Jesse O. Snyder advanced certain monies to Mrs. Hughes during her lifetime, for which he took notes and entered judgments. As the executor of her will, he distributed the residue of this estate to himself as judgment creditor. Jesse O. Snyder died February 10, 1941. The last occasion upon which he is alleged to have made a statement on the subject was in 1940. This is the only statement within three years prior to the institution of the suits, and hence the only statement that would take the case to the jury, under the plea of limitations, as an acknowledgment of indebtedness. Mrs. Rosilyn M. Snyder, wife

of Harold Snyder, a son of W. Firey Snyder, testified that in the summer of 1940 "I should say late July," she heard Jesse O. Snyder say to her father-in-law, in reference to the estate he had acquired from Abraham, "that all had been taken care of." On motion, this answer was stricken out. She then testified that Jesse O. Snyder said: "The money would be paid Elva, my mother-in-law, the money he had promised her aunt and her mother." In reply to a question by the court as to why he said it would be paid, if he had already said it had been taken care of, she said: "Maybe I haven't worded it just exactly as he said it, but very much to that effect, that the matter had been taken care of or something to that effect." A motion to strike out this answer was overruled.

It was conceded that nothing was ever paid to Mrs. Hughes or Mrs. Summers or to Elva B. Snyder, prior to the death of Jesse O. Snyder, on account of the alleged indebtedness. Under the will of Jesse O. Snyder several pieces of real estate were devised to W. Firey Snyder, either directly or in remainder. The residuary estate was left to his secretary, Miss Cearfoss.

The first of the two present cases was begun on April 2, 1943, in the Circuit Court for Washington County, by titling. The declaration was filed on April 15, 1943. On May 10, the plaintiff filed a motion for judgment *nil dicit,* on the ground that the defendant had filed no answer within thirty days of the rule day to which she was summoned, and a motion for judgment by default, for want of an affidavit of defense, as required by local rules of court. The defendant thereafter, on May 14, filed affidavit of defense, and, on May 17, answers to the plaintiff's motions. Upon hearing, the court ruled that neither judgment *nil dicit* nor judgment by default should be entered.

Meanwhile, on April 21, 1943, the case of Elva Snyder, administratrix of the estate of Mrs. Hughes, was filed. Demurrers to both declarations, as particularized, were overruled; the defendant filed (1) pleas of limitations, (2) that the cases were not commenced within nine

months after claims filed by Elva against the estate of Jesse O. Snyder had been refused by the defendant in writing, and (3) general issue pleas. The cases were removed to Frederick County, consolidated, and came to trial on May 23, 1945. At the close of the testimony the court declined to direct verdicts for the plaintiffs, or for the defendant. No exceptions were taken to the court's oral charge. The verdicts of the jury were for $28,521.93 in each case "and that the sum to be paid by the defendant out of the assets in her hands is $7,-978.28" in each case. It had been stipulated that the total assets in the defendant's hands were $15,956.57.

Motions for new trial were filed in each case, and heard on June 23, 1945. On September 14, 1945, the court signed an order granting a new trial, and overruling motions for judgment *n. o. v.* From that order the appeal to this court was taken. The defendant has filed a motion to dismiss the appeal on the ground that no final judgment has been entered, and that no appeal lies from the action of the lower court in granting a new trial. The appellants contend that the action of the court in granting the new trial was an abuse of discretion, an invasion of the province of the jury, and is reviewable in this court.

In passing upon the motion for a new trial (which set forth all of the usual grounds), Judge Woodward, speaking for the three-judge court, said: "I will not review all the evidence in the case, but I want to just point out some of the highlights that have influenced us in arriving at that conclusion. We are fully aware that the court should not substitute its judgment for that of the jury when the issues have been fairly presented and where there is substantial evidence on both sides and where its is clearly a case for the jury to decide the issues. But Judge Prescott and I feel that because of the nature of this case, because of its character, that here is a claim against an estate that could have been presented against Snyder while he was living, and it rocked along for twenty-some years, something like that, and the claim

was never presented, and here it shows that he filed his claim against one of these estates when he was an administrator, and the evidence that would bring the case within the statute of limitations or prevent the statute from becoming a bar is to my mind just barely more than a scintilla of evidence. It was enough to get the case to the jury, but under our system here in Maryland, if there is more than a scintilla of evidence, and giving consideration to all the evidence and all the inferences properly deducible from it you find that there is more than a scintilla of evidence, you have to let the jury pass on it. Now that rule doesn't obtain in the Federal Court. But we felt there was enough evidence to go to the jury. But the evidence is not satisfactory to us; it is unconvincing. The total effect of it is to set aside a will that was some forty years old. We feel that there ought to be clear and satisfactory evidence to sustain that kind of a case. It is not convincing to us; it is not satisfactory. It is the duty of the Court when it feels the way we do about a case to grant a new trial, and I personally feel it would be a dereliction of duty on my part if I sat here and let a verdict like that stand with the type of evidence that we had in the case. For those reasons and others that might be given, without reviewing all the testimony the majority of the Court has decided to grant the motion * * *."

We think the motion to dismiss the appeal must be granted. There has been no final judgment, and until final judgment the appeal is premature. In *Elkton Supply Co. v. Stubbilles,* 180 Md. 97, 23 A. 2d 3, 4, this court said: "It has long been the well-settled rule that an appeal cannot be taken from a verdict only, but must be from a final judgment, duly entered by the court. Until a final judgment has been entered this court has no jurisdiction to hear the case on appeal." See also *Hayman v. Lambden,* 97 Md. 33, 54 A. 962; *Smithson v. United States Tel. Co.,* 29 Md. 162, 163, and *Boteler v. State,* 7 Gill & J. 109. The fact that a ruling complained of may, under certain circumstances be reviewable on the ground of

abuse of discretion, does not make it reviewable forthwith. *Lee v. State,* 161 Md. 430, 157 A. 723. It is generally recognized that the effect of granting a motion for a new trial is to leave the cause in the same condition as if no previous trial had been held. *State, to Use of Scruggs v. Baltimore Transit Co.,* 177 Md. 451, 454, 9 A. 2d 753; *Boteler v. State, supra; Wallace v. Burke,* 158 Pa. Super. 612, 45 A. 2d 871.

The rule is well settled in this state that the action of a trial court in granting or refusing a motion for a new trial is not appealable. *Wilson v. State,* 181 Md. 1, 8, 26 A. 2d 770; *Phoebus v. Sterling,* 174 Md. 394, 396, 198 A. 717; *Lynch v. Mayor and City Council of Baltimore,* 169 Md. 623, 633, 182 A. 582; *Stern v. Bennington,* 100 Md. 344, 60 A. 17, 108 Am. St. Rep. 433; *Baltimore & O. v. Brydon,* 65 Md. 198, 230, 611, 3 A. 306, 9 A. 126, 57 Am. Rep. 318; *Waters v. Waters,* 26 Md. 53; *Morrison v. Whiteside,* 17 Md. 452, 460, 79 Am. Dec. 661; *Anderson v. State,* 5 Har. & J. 174, 175; *Poe, Practice* (Tiffany's Ed), Sec. 439; *Evans, Practice,* 2d Ed., Sec. 417; 14 *Enc. of Pleading and Practice,* p. 768. In *Washington B. & A. E. R. Co. v. Kimmey,* 141 Md. 243, 244, 250, 118 A. 648, 650, this court said: "The general rule is that the disposition of a motion for a new trial is within the sound discretion of the trial court and is not a subject of appeal. There is a review of the decisions to that effect in the recent case of *Chiswell v. Nichols,* 139 Md. 442, 115 A. 760. * * * This appeal is not from the order overruling the motion for a new trial, but from a judgment rendered after a new trial had been refused, and we are dealing with an exception which complains of the exclusion of evidence tending with practical certainty to produce the result to which the motion was directed." It was held that the exclusion of this evidence was reversible error.

This decision was further explained in the case of *State, to Use of Scruggs v. Baltimore Transit Co., supra,* where the court said (177 Md. at page 454, 9 A. 2d at page 754): "The aggrieved party is generally entitled to

no more than an opportunity to a court and a hearing. * * * It is only where the action of the court has in fact denied to the party some substantial right * * * that a review is entertained on appeal. The appeal in the case of Washington B. & A E. R. Co. v. Kimmey, * * * exemplifies this point. In that decision, the trial court had, by its action on a motion of *ne recipiatur*, refused, in effect, to entertain the motion for a new trial. * * * Here no such course was pursued. In *Hartlove v. E. & H. Bottling Co.*, 160 Md. 507, 508, 153 A. 850, 851, this court said: "We may as well dismiss from consideration the suggestion that any mistake or erroneous conclusion as to law or fact can be brought up for review on an appeal from the trial court's action on such a motion." This court declined to review the action of the trial court in granting a new trial, although it was contended to be an abuse of discretion. The court further said (160 Md. at page 509, 153 A. at page 851) : "In the brief, and in the oral arguments of appellant much emphasis is laid on the word 'sound' as if it were for this court to say whether a sound discretion had been exercised. But it is clear * * * that while the motion must be based upon justice, of that 'the Court, before which the case was tried, alone can judge'."

The alleged abuse of discretion in this case is not the refusal of the court to consider evidence, but the exercise of its power to set aside the verdicts. It is well settled that a trial court may set aside a verdict on the ground that it is against the evidence, or against the weight of the evidence. 2 *Poe, Practice* (Tiffany Ed.), Sec. 336. In *Graham and Waterman, New Trials* (1855), p. 1211, the matter is discussed at length, and the relevant English and American authorities are cited. While it is said that the power of the trial court should be sparingly exercised, such power is universally recognized as a necessary incident and corrective to the jury system. The authors state: "The power exercised by the court in the premises is only advisory. In granting a new trial, it does not assume that the verdict is, but that it may be

wrong. It says to the parties, we are strongly apprehensive that the result is not in accordance with the evidence. We think it expedient to submit the case to another jury, and leave it to them to say whether or not our fears are well founded. * * * It is settled, then, that the court which tried the cause, may, in a proper case, of which it shall be the judge, set aside the verdict and grant a new trial, under circumstances which at first blush would seem to trench upon the rights of the jury. It can look through the evidence upon which the jury have passed, and then consider the verdict. It can compare them, and, if the one is clearly irreconcilable with the other, can so pronounce, and order the case to be submitted to another jury."

In *Kohne v. Insurance Co. of N. A.*, 1803, Fed. Cas. No. 7,921, 1 Wash. C. C. 123, Mr. Justice Washington said: "If the verdict be plainly against the evidence; or * * * where some doubt might exist as to the correctness of the conclusion drawn by the jury; it would seem right that the case should be more deliberately argued and considered by another jury."

In *Bright, Executor v. Eynon*, 1 Burr. 390 (1757), Lord Mansfield, in granting a new trial against the verdict of a jury, said: "Trials by jury, in civil causes, could not subsist now without a power, somewhere, to grant new trials, * * * a general verdict can only be set right by a new trial; which is no more than having the cause more deliberately considered by another jury; when there is a reasonable doubt, or perhaps a certainty, that justice has not been done."

We cannot substitute our judgment as to the weight of the evidence for that of the trial court. If the evidence is not satisfactory to the trial court, it is within its province to order a new trial before another jury. Whether there is any limit to the number of times a trial court may override a jury's verdict is a question upon which we need not pass at this time. There is authority to the effect that successive verdicts may become conclusive. *Perlman v. Brooklyn Heights R. Co.*, 137 N. Y. S. 917.

The appellant urges, however, that the trial court lost its jurisdiction by reason of the fact that it did not rule on the motion within two months from the date of the hearing. Art. IV, Sec. 23 of the Maryland Constitution provides: "The Judges of the respective Circuit Courts of this State and the Courts of Baltimore City, shall render their decisions in all cases argued before them, or submitted for their judgment, within two months after the same shall have been so argued or submitted." An identical provision as to the Circuit Courts was contained in the Constitution of 1864, Art. IV, Sec. 30.

The language of Section 23 of Article IV provides no penalty for failure to act within the time prescribed. It was held in *Truett v. Legg,* 32 Md. 147, that a motion for new trial does not expire with a term of court, but until disposed of, suspends the judgment. In that case, although the motion was not passed upon until after several terms had intervened and the new court set up by the Constitution of 1867 had come into office, it was held that the court had jurisdiction. The order of the trial court in quashing execution issued upon the verdict, and ordering a new trail, was affirmed. See also *Heiskell v. Rollins,* 81 Md. 397, 32 A. 249. Likewise in the case at bar the trial court did not lose its jurisdiction to pass upon the motion by reason of delay; if it had lost jurisdiction to pass upon the motion, it could be argued with equal force that it lost jurisdiction to enter the final judgment. Compare *American Ry. Express Co. v. Eddy,* 220 N. Y. S. 164. Until final judgment, there is nothing for this court to review. We express no opinion upon the other points argued.

*Appeal dismissed, with costs.*