## GEORGE JOSEPH BRODAK *v.* ROSE MARIE ELIZABETH BRODAK

[No. 1, September Term, 1982.]

*Decided July 21, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Robert H. Reinhart,* with whom were *Walsh, Walsh & Reinhart* on the brief, for appellant.

12

*Lawrence E. Finegan,* with whom was *Alan L. Winik* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

In this case neither the former husband, George Joseph Brodak (the husband), nor the former wife, Rose Marie Elizabeth Brodak (the wife), is happy with the chancellor's decision in their divorce action. Each appealed to the Court of Special Appeals. The husband is firmly of the view that the chancellor erred in his determination of what was marital property and in the amount of monetary judgment entered based upon its value. The wife feels aggrieved because the chancellor reserved the question of alimony rather than awarding it in the decree dated August 25, 1981. Their dissatisfaction, which we find to be without a sound legal basis, produces the question which prompted us to grant certiorari in this case upon the parties' petition prior to a decision by the Court of Special Appeals.

Maryland Code (1974, 1980 Repl. Vol.) § 3-6A-05 (a), Courts and Judicial Proceedings Article, provides that in granting an absolute divorce, "or at any time within 90 days thereafter, if in its decree granting the divorce . . . the court has expressly reserved the power to do so, the court shall determine which property is marital property if the division of property is an issue." The divorce decree in this instance did reserve the power to determine the division of marital property. Unfortunately, the decree making the marital property designation was not filed until the ninety-first day after the divorce decree. Hence, the husband contends, relying upon *Russell v. Russell,* 50 Md. App. 185, 436 A.2d 524 (1981), that the Circuit Court for Garrett County was without jurisdiction to make the award. We disagree and shall affirm on all issues.

## i The ninety-day issue

Prior to the General Assembly's passage of the act relative to marital property, Ch. 794 of the Acts of 1978, which is codified as Code (1974, 1980 Repl. Vol.) §§ 3-6A-01 to -07, Courts and Judicial Proceedings Article (the Act), Maryland courts granting a divorce a mensa et thoro or a vinculo matrimonii were empowered by Code (1957) Art. 16, § 29 "to

hear and determine all questions which m[ight] arise between the parties to such proceeding in connection with the ownership of personal property (except chattels real) held, possessed or claimed by either or both of them, and . . . ha[d] the power to make a division of such property between them, or order a sale thereof and a division of the proceeds of such sale, or make such other disposition thereof as the court m[ight] deem proper." No authority existed, however, to award to one spouse property solely owned by the other spouse. *Bowis v. Bowis,* 259 Md. 41, 45-46, 267 A.2d 84 (1970); *Gebhard v. Gebhard,* 253 Md. 125, 130, 252 A.2d 171 (1969); *Brucker v. Benson,* 209 Md. 247, 250, 121 A.2d 230 (1956); and *Dougherty v. Dougherty,* 187 Md. 21, 32, 48 A.2d 451 (1946).

The husband's argument runs as follows: Since "the courts of equity in Maryland had no jurisdiction [prior to the enactment of the Act] to adjust the property rights of spouses or to make a monetary award to a wife who had not contributed financially toward the purchase of property held by the husband" and since the provision in § 3-6A-05 (a) is for a period of time "within 90 days" after the granting of an absolute divorce or annulment, "[i]t is clear that the court's jurisdiction to further entertain the matter after having expressly reserved the power to do so is lost if a determination is not made within the time prescribed." He then says, "The precise issue presented here was before the court in *Russell v. Russell,* 50 Md. App. 185 (1981)."

In *Russell* a decree dated August 26 reserved " 'the issue of monetary award of the marital property.' " A hearing was held on November 24. The decree was passed on December 29. It seems, according to the Court of Special Appeals, that the parties "agree[d] that the time in which the court would determine which property was marital property would be extended beyond 90 days after the divorce decree." 50 Md. App. at 186. The court said:

> "[H]aving failed to designate the marital property within this time, the court lost jurisdiction and any determination thereafter concerning the appellee's pension rights were nugatory. The parties could not

confer jurisdiction by consent where the jurisdiction did not exist under the appropriate law; this deficiency may be raised at any time. *Stewart v. State,* 287 Md. 524, 527, 413 A.2d 1337, 1339 (1980)." 50 Md. App. at 187.[1]

However, we were not requested to review that decision. We agree that the parties could not by their mutual assent extend the time within which the chancellor was to act, but we disagree with the concept that because of the delay "the court lost jurisdiction and [for that reason] any determination[s] thereafter concerning the appellee's pension rights were nugatory."

In *Stewart v. State,* 287 Md. 524, 413 A.2d 1337 (1980), we were faced with the issue of whether an indictment returned by a grand jury was void ab initio. Stewart was alleged to have been delinquent. Juvenile jurisdiction was waived, from which order Stewart appealed. The Court of Special Appeals affirmed the waiver order. Prior to the issuance of the mandate by the intermediate appellate court, the grand jury returned an indictment charging him with the crime that served as the basis of the delinquency petition. He argued that the indictment was void because it had been returned prior to issuance of the mandate in the appeal of the waiver determination. We affirmed the decision of the Court of Special Appeals holding that the indictment was not void. Judge Digges said for the Court in that case:

"In explaining the rationale for the mandate we issue in this case, it may be well to recall for the reader that ' "[j]uridically, jurisdiction refers to two quite distinct concepts: (i) the *power* of a court to render a valid [final judgment], and (ii) the *propri-*

---

1. In apparent response to *Russell v. Russell,* 50 Md. App. 185, 436 A.2d 524 (1981), the General Assembly enacted Ch. 294 of the Acts of 1982 as an emergency measure. It took effect from the date of its passage and was made applicable "to all divorce and annulment proceedings pending before the court in which a determination under th[at] Act ha[d] not been made as of the date of the enactment . . . ." It amended § 3-6A-05 (a) (1) by adding, "If the court has reserved the power to make the determination, the court may within the time reserved further extend the time for making the determination with the consent of the parties."

*ety* of granting the relief sought. 1 Pomeroy, *Equity Jurisprudence* (5th ed. 1941), Secs. 129-31." ' *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 334, 322 A.2d 539, 543 (1974) (quoting *Moore v. McAllister,* 216 Md. 497, 507, 141 A.2d 176, 182 (1958)). Thus, it is only when a court lacked fundamental jurisdiction to render the judgment it did that there is an absence of authority in the court so as to render its judgment a nullity. *First Federated Com. Tr. v. Comm'r, supra,* 272 Md. at 334, 322 A.2d at 543. *Accord, Pulley v. State,* 287 Md. 406, 412 A.2d 1244, 1248-51 (1980); *Parks v. State,* 287 Md. 11, 17-19, 410 A.2d 597, 601-02 (1980); *Block v. State,* 286 Md. 266, 270-73, 407 A.2d 320, 322-24 (1979). On the other hand, 'the question of whether it was appropriate to grant the relief merges into the final [judgment] and cannot therefore be successfully assailed for that reason once enrolled.' *First Federated Com. Tr. v. Comm'r, supra.* The power possessed by a court to hear and determine disputes, including that which is inherent, is derived from applicable constitutional and statutory pronouncements. So if,

by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over the class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction. The circuit courts of this State, such as the Circuit Court for [Cecil] County, are courts of original general jurisdiction, Maryland Const., Art. IV, §§ 1, 19, 20 and therefore, they may hear and decide all cases at law [(which include criminal causes)] and in equity [(which include juvenile causes)] other than those which fall within the class of controversies reserved by a particular law for the exclusive jurisdiction of some other forum. [*First Federated Com. Tr. v. Comm'r, supra,*

16

272 Md. at 335, 322 A.2d at 543 (citations omitted).]

> To this we add the widely acknowledged principles that parties cannot confer jurisdiction, in its fundamental sense, upon a court by consent, and that the lack of such jurisdiction may be raised at any time, including initially on appeal. But when a court of general jurisdiction has jurisdiction over the subject matter of the litigation and also the parties, it ordinarily has power to decide the issue in dispute between those parties." 287 Md. at 526-28 (emphasis and bracketed material in original; footnote omitted).

Relying upon *Pulley v. State,* 287 Md. 406, 417-19, 412 A.2d 1244 (1980), we concluded in *Stewart,* 287 Md. at 529, that "the circuit court . . . retained jurisdiction over the subject matter and was not deprived by a stay order or otherwise by law from exercising that jurisdiction pending the appeal" and that the indictment was not a void document. There is nothing in the statute here to indicate an intent on the part of the General Assembly to strip the court of its jurisdiction relative to marital property after the lapse of ninety days from the date the decree was entered. The statute does not state that if a court, under the circumstances here, grants an absolute divorce it shall have jurisdiction only for a period of ninety days. Rather, it says that in granting a divorce "or at any time within 90 days thereafter [under certain circumstances] the court shall determine which property is marital property if the division of property is an issue."

In *Parks v. State,* 287 Md. 11, 410 A.2d 597 (1980), Judge Cole observed for the Court:

> "A trial court has jurisdiction for purposes of double jeopardy when it has jurisdiction over the subject matter and the person of the defendant. A statute which seeks to limit the period in which a court should exercise its authority does not deprive it of jurisdiction for purposes of double jeopardy considerations. Thus, if the court exercises its power

outside the prescribed period, its judgment is not thereby rendered void but only voidable." 287 Md. at 16-17.

In that case the accused was not brought to trial until 124 days after he filed a request for the disposition of an intra-state detainer pursuant to Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.) Art. 27, § 616S, which required that he be tried within 120 days after receipt of the request by the proper authorities. We held that the trial court at all times had jurisdiction over both the defendant and the subject matter and that "[t]he expiration of the 120 day period in the statute affected neither of these grounds of jurisdiction." *Id.* at 19.

Accordingly, we hold in this instance that the court was not deprived of jurisdiction by its failure to act within the ninety-day period.

The husband's basic contention here is that the language in the statute is mandatory and that because the trial court did not act within ninety days, the sanction should be that the court is prohibited from acting. Such is not the law. Although the parties have spent time talking about whether the word "shall" in the statute is directory or mandatory, we do not see this case as turning upon that point.

A number of our cases have considered issues similar to that in the case at bar. For instance, in *McCall's Ferry Co. v. Price,* 108 Md. 96, 69 A. 832 (1908), a motion for reargument was filed on the ground that the Court's opinion had not been filed within three months after the argument as required by Maryland Constitution art. IV, § 15. The Court took pains there to point out that when it "reached the conclusion that the judgment must be affirmed, and in order that the parties might know that conclusion, [the Court] filed on April 9, 1908, a *per curiam* order affirming the judgment, stating that the opinion would thereafter be filed, as has been the practice of this Court, when the circumstances justified and required that course." 108 Md. at 114. The Court did discuss the directory-mandatory issue, stating:

"So far as we are aware, it has always been the opinion of the members of this Court that the clause

is merely directory, and not mandatory, and hence the Court has not hesitated when circumstances required it to file opinions after the three months. It has for example sometimes at its final sittings at the April Term (usually in June) when for some satisfactory reason no opinion had been adopted, affirmed cases by *per curiam* orders, and filed opinions at the following October Term. The object of the constitutional provision is to have prompt decisions of causes, and no one can justly complain of unnecessary delay by this Court in filing opinions and deciding cases before it. It certainly would not be within either the letter or the spirit of this provision to grant a reargument, because an opinion had not been filed within three months — thereby causing further delay." *Id.* at 113.

In *Snyder v. Cearfoss,* 186 Md. 360, 46 A.2d 607 (1946), it was contended "that the trial court lost its jurisdiction by reason of the fact that it did not rule on the motion [for a new trial] within two months from the date of the hearing." 186 Md. at 370. The appellant relied upon Const. art. IV, § 23 which provides that circuit courts shall render their decisions in all cases "within two months after the same shall have been . . . argued or submitted." Judge Henderson said for the Court, "[T]he trial court did not lose its jurisdiction to pass upon the motion by reason of delay; if it had lost jurisdiction to pass upon the motion, it could be argued with equal force that it lost jurisdiction to enter the final judgment." *Id.* See also *Resetar v. State Bd. of Education,* 284 Md. 537, 547-50, 399 A.2d 225, *cert. denied,* 444 U.S. 838 (1979).

The effect of "shall" depends upon the context in which it is used. *In re James S.,* 286 Md. 702, 410 A.2d 586 (1980), involved a statute stating that if it were alleged that a juvenile was delinquent, a petition alleging delinquency was to be prepared and filed by the State's attorney, with the further proviso that such petition "shall be filed within 15 days after the receipt of a referral from the intake officer." There we were struck by the similarity between the language used

in the statute then under consideration and that contained in the various statutes of limitations. We saw the statute "as clearly and unambiguously requiring that a petition alleging delinquency must be filed within 15 days after the receipt of a referral from the intake officer." 286 Md. at 713. The failure there was on the part of the attorney for one of the parties, the prosecutor. In contrast, the allegation here is not that one of the parties has failed to act, but that the arbiter has not acted within the specified time.

The case at bar is closely analogous to *In re Dewayne H.,* 290 Md. 401, 430 A.2d 76 (1981). *Dewayne H.* concerned the time provision in Maryland Rule 915 a which requires that a "disposition hearing [in a juvenile proceeding] shall be held no later than thirty days after the conclusion of the adjudicatory hearing." In that case the juvenile court master did not hold that hearing until the thirty-first day. A judge sitting for juvenile matters regarded himself as bound under the rule to dismiss the proceeding. We held to the contrary, stating:

> "Enlightenment as to the sanction to be applied for violation of a command with the word 'shall' in a situation similar to that in the case at bar is found in *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979). The Court there said:
>
>> There are two circumstances, however, under which dismissal is not an appropriate sanction for violation of Rule 746.
>>
>> First, in addition to the requirement that, absent extraordinary cause, criminal cases at the circuit court level be tried within 120 days of the appointment or waiver of counsel or after the appearance of counsel under Rule 723, Rule 746 also requires that the act of setting this trial date be done within 30 days. Of course, as long as the case is tried within the 120-day deadline, the purpose of the rule and the statute upon which it is based, namely having the case tried promptly, will be accomplished, even if the setting of that trial date is not done within 30

days. In other words, the legislative purpose underlying § 591 and Rule 746 will in no way be advanced by holding that dismissal is the appropriate sanction for violation of the 30-day requirement. For this reason, we do distinguish between the 120-day requirement and the 30-day requirement. While the 30-day requirement is mandatory for those persons involved in setting the trial date, we hold that dismissal of the criminal case is not an appropriate sanction for violation of the 30-day provision. [*Id.* at 335.]

"Unlike the bringing of a civil or criminal proceeding where the applicable time limits are largely in the control of the party initiating the litigation, neither party here had control over the date set for the disposition hearing. We do not have before us in this proceeding the question of what, if any, sanction other than dismissal of the proceeding might be applied. . . . The State as the representative of the general public has an interest in seeing that this juvenile is rehabilitated so that he becomes a useful citizen and in no way a menace to society. In that circumstance it simply does not follow that the proper sanction for violation of the rule is dismissal of the proceeding. The reasoning we have set forth from *Hicks* is applicable here. The juvenile judge erred." 290 Md. at 406-07.

Although the husband relies upon *Scherr v. Braun,* 211 Md. 553, 128 A.2d 388 (1957), that case is readily distinguishable. It illustrates a situation where the General Assembly has stated that the failure to act on the part of one vested with responsibility for deciding a matter may have a specified effect. That case involved an appeal from the Board of Liquor License Commissioners for Baltimore City. The statute contained a provision similar to that currently found in Code (1957, 1981 Repl. Vol.) Art. 2B, § 175(e)(3), which states, "The failure of the court to determine an appeal

within a period of 30 days after the record has been filed in court by the local board . . . , shall constitute an automatic affirmance of the local board's decision, unless the time has been extended by the court for good cause shown." Judge Hammond pointed out for the Court that a provision is generally regarded as directory "[w]here the directions of a statute look to the orderly and prompt conduct of business, including the business of a court . . . ." 211 Md. at 561. Then, after referring to *McCall's Ferry* and *Snyder,* the Court said:

> "In each of those cases, however, no consequences were attached to the failure to act and there were no words denying exercise of power or authority after the time named. In the statute now under consideration, there are specific consequences of a failure to act, and an implication in the literal language that is a negation of the right to act after the time specified. That the words of the statute mean what they would normally mean is indicated by the statute's background and purposes, and the consequences which may result from one meaning rather than the other." *Id.* at 561-62.

The Court indicated that prior to the enactment of that particular statute in 1943, provision was made in only one or two jurisdictions for the review by trial courts of the grant or denial of licenses to sell alcoholic beverages, "perhaps because the privilege of selling alcoholic beverages is not a property right." *Id.* at 562. Judge Eldridge most recently examined this statute for the Court in *Brown v. Baer,* 291 Md. 377, 435 A.2d 96 (1981).

Yet another analogous case is *Bellamy v. State,* 50 Md. App. 65, 435 A.2d 821 (1981), *cert. denied,* 292 Md. 376 (1982). The time provision there contained in what was then Code (1957, 1979 Repl. Vol.) Art. 59, § 26 (a) required the Department of Mental Hygiene to "forward a report of its opinions relating to insanity at the time of commission of the alleged offense and to competency to stand trial to the court having jurisdiction over the defendant within 60 days after referral" where a defendant interposed a defense of insanity

under § 25 of Art. 59. The report was not filed within the required sixty-day period. Judge Thompson said for the Court of Special Appeals:

"We think that the legislature did not intend that criminal charges should be dismissed because the Department of Mental Hygiene was late in filing its report. This is evidenced by two factors. First, the former art. 59, § 26 provided no sanction for failure to comply with its provisions. *See, Resetar v. State Board of Education,* 284 Md. 537, 548, 399 A.2d 225, *cert. denied,* 444 U.S. 838 (1979); *Maryland State Bar Association v. Frank,* 272 Md. 528, 533, 325 A.2d 718 (1974); *Pope v. Secretary of Personnel,* 46 Md. App. 716, 717, 420 A.2d 1017 (1980). Second, it is significant to note that § 26 was amended, effective July 1, 1980 so that it now provides that, 'failure to comply with these time limitations shall not, of itself, result in dismissal of the charges.' *See,* art. 59, § 26 (1980 Cum. Supp.). The 1980 amendment clearly evidences legislative intent to alleviate any doubt as to whether the sanction of dismissal is applicable to § 26. Additionally, as subsection (a) was not changed with the enactment of the new statute, it clearly would not be logical to assume that dismissal was the proper sanction under the former statute. In addition, we would be most reluctant to impose the extreme penalty of dismissal of the charges, absent a clear mandate from the legislature." 50 Md. App. at 78-79.

Our sister jurisdictions have faced analogous situations. *See, e.g., Garrison v. Rourke,* 32 Cal. 2d 430, 433-37, 196 P.2d 884 (1948), *overruled on other grounds, Keane v. Smith,* 4 Cal. 3d 932 (1971) (Statute provided that in an election contest the court should file its findings and conclusions within ten days after the submission of the case. This was not done. The court said, "The consequence or penalty for the failure of the court to file findings of fact and conclusions of law within the designated period was not included

in the statute." It found the provision to be directory, saying, "The result of a different conclusion . . . would be to divest the court of jurisdiction by mere implication."); *International Brotherhood of Teamsters v. Shapiro,* 138 Conn. 57, 60-68, 82 A.2d 345 (1951) (Arbitration board's failure to make its award within prescribed time did not vitiate such award.); *Carrigan v. Liquor Control Com.,* 19 Ill. 2d 230, 232-36, 166 N.E.2d 574 (1960) (Statutory provision requiring the commission's consideration of an application for rehearing within twenty days after the filing of such application was held to be directory only.); *Rawson v. Parsons,* 6 Mich. 401, 405 (1859) (The trial court's decision was not given within the period prescribed. The court said, "It imposes a duty upon the judge: but as the parties have no control over his action, it would be a harsh construction which should deprive them of the fruits of the litigation because the judge fails to decide by a particular day. This provision has been practically construed as only directory, in most, if not all, the circuits."); *Jersey City v. State Board of Tax Appeals,* 133 N.J.L. 202, 210, 43 A.2d 799 (1945), *modified on other grounds, Jersey City v. Kelly,* 134 N.J.L. 239, 47 A.2d 354 (1946) (Statute required that State Board of Tax Appeals should "conclude its hearings on or before October 15th following the filing of the complaint . . . ." The court said:

> "Failure, in the circumstances, to observe the time provision could not and did not dissipate the jurisdiction which the State Board of Tax Appeals had properly acquired in the first instance over the subject-matter and of the parties. If the legislature had intended that the State Board of Tax Appeals lost jurisdiction to hear appeals after October 15th, it would clearly have said so.");

*Fallon v. Hattemer,* 229 A.D. 397, 398-402, 242 N.Y.S. 93 (1930) (Statute required county court to render its decision within ten days. The court observed:

> "Nothing in the statute states what is to become of the proceeding in the event of the omission of the

county judge to make his determination within the ten days. We have the penalties for failure to make decisions within the time limited in the cases of the Supreme Court where a decision in writing must be filed within sixty days after final adjournment of the term where an issue of fact was tried, in which case, if not so filed, either party may move at a Special Term for a new trial (Civ. Prac. Act, § 442); and in the case of the Municipal Court of the City of New York where, upon the failure to render judgment within fourteen days after a cause is submitted, the case is required to be placed upon the general calendar, and in the case of a motion not decided within fourteen days after submission, the motion may be renewed (N.Y. City Mun. Ct. Code [Laws of 1915, chap. 279], § 119, as amd. by Laws of 1919, chap. 340)." 229 A.D. at 399 (brackets in original).

It was contended that because the decision was not rendered until eighty-five days after argument, the county judge had lost jurisdiction. The court held that this did not render the proceeding void.); *Perkins v. Roberts County,* 27 S.D. 281, 283-86, 130 N.W. 443 (1911) (Statute required referee to file his report within twenty days, which report was not timely filed. The court said, "It seems to us that the statute fixing the time within which courts and referees are required to file decisions were both framed with a view to expediting the determination of causes, rather than to limit the powers or jurisdiction of either courts or referees."); *Trapp v. McCormick,* 175 Tenn. 1, 9-10, 130 S.W.2d 122 (1939) (Trial judge's failure to file a decree within the time period set by statute did not void the decree.); and *State v. Industrial Comm.,* 233 Wis. 461, 466, 289 N.W. 769 (1940) ("The failure of the commission to act [upon a petition to review the findings and order of an examiner] within ten days [as required by statute] is not jurisdictional.").

In our view the word "shall" in the statute is mandatory. *Russell,* 50 Md. App. 185, thus was correctly decided because the parties there were at fault; in that circumstance the

sanction was properly imposed. That does not dispose of the matter, however. When a statute of limitations specifies that a proceeding must be brought within a certain period of time, it is the failure of the party initiating the proceeding to act within that time frame which bars the action. When a rule or statute says that an appeal must be filed within a stated period of time and the appeal is dismissed for failure to comply, it is the party entering the appeal who is guilty of delay. The position that the husband would have us take would be to impose a sanction on the parties for the failure of the arbiter of the controversy, in this instance the circuit court, to act within the period prescribed by statute. Since it is the husband, not the wife, who is dissatisfied with the chancellor's award, the practical effect were we to adopt the husband's position would be to place the sanction for the chancellor's failure to act within the specified time upon the prevailing party, the wife. We think that result would be wrong. Absent a mandate from the General Assembly similar to that in *Scherr,* 211 Md. 553, in light of the peculiar facts and circumstances there present, we decline to impose such a sanction here.

### ii The allocation of marital property

The husband contends that the trial judge was clearly in error in his determination of which property was marital property and in his determination of that property's value. He further contends that the chancellor erroneously and improperly applied the factors set forth in § 3-6A-05 (b) in granting a monetary award to the wife.[2]

---

2. Code (1974, 1980 Repl. Vol.) § 3-6A-05 (b), Courts and Judicial Proceedings Article, states:

"The court shall determine the value of all marital property. After making the determination, the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The amount of the award and the method of its payment shall be determined after considering each of the following factors:

"(1) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

"(2) The value of all property interests of each spouse;

"(3) The economic circumstances of each spouse at the time the award is to be made;

Under Rule 886 and its counterpart applicable in the Court of Special Appeals, Rule 1086, "the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." We have meticulously reviewed this record and conclude that the chancellor did not clearly err.

Section 3-6A-01 defines marital property as "all property, however titled, acquired by either or both spouses during their marriage. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement or property directly traceable to any of these sources." Among the husband's assets was a trailer park in Carmichaels, Pennsylvania, that his parents conveyed to him in 1975. The chancellor found this to be a gift from the husband's parents and, hence, not marital property. However, the trial judge said that three trailers at the trailer park "were acquired during the marriage and were not a gift to George and thus constitute marital property." The husband contends that the trial judge erred here because this "was directly traceable to a gift." We disagree. It is true that these trailers were said to have been purchased with income produced by the trailer park, but the wife worked there after the gift was made. She testified:

"I took care of all of the bookkeeping. I paid all the bills, and when the first trailer started to move in,

"(4) The circumstances and facts which contributed to the estrangement of the parties;

"(5) The duration of the marriage;

"(6) The age and the physical and mental condition of the parties;

"(7) How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

"(8) Any award or other provision which the court has made under this Subtitle 6A with respect to family use personal property or the family home, and any award of alimony; and

"(9) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award."

I kept all the receipts and they came to us and paid the rent and I would give them a receipt, and I would see to it that, you know, the rent was paid on time and things like that."

If the chancellor believed that testimony, as he apparently did, then the income from the trailer park which provided the funds to purchase those trailers was partly generated through the efforts of the wife and thus cannot be said to be directly traceable to the gift. We cannot conclude that this finding was clearly in error.

The husband also takes issue with some of the values that the trial judge placed upon the property. We have recognized that appraisal is not an exact science. *See, e.g., Weil v. Supervisor of Assess.,* 266 Md. 238, 254, 292 A.2d 68 (1972). Thus, we find the values assigned by the trial judge to be consistent with the evidence before him. In looking at the overall total it appears that, contrary to the husband's contention, the trial judge gave consideration to the existing encumbrances. It does not appear that the chancellor awarded the wife the maximum amount which the evidence would support. He was judicious in his determinations. We therefore find that the chancellor was not clearly in error.

Likewise, the chancellor appears to have carefully considered each of the factors he was required to consider under § 3-6A-05 (b).

### iii Alimony

The chancellor decreed "[t]hat no alimony is presently due, but that the issue will continue to be reserved." The trial judge reasoned:

"Since the Court has determined the value of the marital property and made a substantial monetary award to Rose, and because she is presently employed, the Court finds it inappropriate to order alimony at this time; this issue will continue to be reserved."

Disagreeing with this portion of the decree, the wife contends:

"There is no authority under the old statute for a determination of alimony based upon a monetary award decreed under the Marital Property Act. It is clear that the chancellor either used the new alimony law or used the old alimony statute but failed to consider the proper standards in making [his] decision. Either is clear error."

Code (1957, 1980 Repl. Vol.) Art. 16, § 1, enacted by Ch. 575 of the Acts of 1980, provides, among other things, that in awarding alimony a court may consider "[a]ny award made under §§ 3-6A-05 and 3-6A-06 of the Courts and Judicial Proceedings Article . . . ." That statute is applicable only to cases filed after July 1, 1980. Since this suit was filed prior to that date, the statute is not applicable.

The statute applicable at the time of the filing of this proceeding is found in Code (1957) Art. 16, § 2. It has not been changed since it was originally enacted by Ch. 12 of the Acts of 1777. It states that courts of equity of this State "shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there."

Ordinarily, permanent alimony to a wife is granted only upon a showing of facts sufficient to support a decree of divorce a mensa et thoro or a vinculo matrimonii. *Bender v. Bender,* 282 Md. 525, 529-31, 386 A.2d 772 (1978), and *Rubin v. Rubin,* 233 Md. 118, 124, 195 A.2d 696 (1963). This Court has stated many times the factors to be considered in reviewing an award of alimony. These factors include the husband's wealth and earning capacity, the station in life of the parties, their physical condition and ability to work, the length of time they have lived together, the circumstances leading up to the divorce, and the fault that destroyed the home. *See, e.g., Blumenthal v. Blumenthal,* 258 Md. 534, 540, 266 A.2d 337 (1970); *Willoughby v. Willoughby,* 256 Md. 590, 593, 261 A.2d 452 (1970); and *Newmeyer v. Newmeyer,* 216 Md. 431, 434, 140 A.2d 892 (1958). We have said that an alimony award should not be disturbed unless the chancellor's discretion was arbitrarily used or his judg-

ment was clearly wrong. *Lopez v. Lopez,* 206 Md. 509, 520, 112 A.2d 466 (1955); *Brown v. Brown,* 204 Md. 197, 206, 103 A.2d 856 (1954); and *Westphal v. Westphal,* 132 Md. 330, 334, 103 A. 846 (1918). An award of alimony is always subject to change if the circumstances, needs, and pecuniary condition of the parties change. *Cohn v. Cohn,* 209 Md. 470, 478, 121 A.2d 704 (1956); *accord, Stewart v. Stewart,* 256 Md. 272, 284, 260 A.2d 71 (1969). As Judge Digges indicated for the Court in *Willoughby,* 256 Md. at 592, "The authority for allowing alimony is statutory, . . . but the standard whereby it is awarded is judicial." Additionally, after reiterating the relevant factors in determining an award of alimony, the Court observed in *Willoughby* that "alimony is based upon need . . . ." 256 Md. at 593. Judicial discretion must be exercised in this regard to the " 'necessary end of awarding justice and based upon reason and law.' " *Burton v. Burton,* 253 Md. 233, 237, 252 A.2d 472 (1969).

Viewed against this background, the chancellor has committed no clear error. He was entitled to consider the award under the Act in determining the needs of the wife. The 1980 statute merely made explicit what had been implicit under prior law. The marital property award had a direct and legitimate bearing upon the wife's then present needs.

*Judgment affirmed; costs to be paid by George Joseph Brodak.*