## JOHN MARTIN STRAWHORN *v.* JANET B. STRAWHORN

[No. 1135, September Term, 1980.]

*Decided October 7, 1981.*

The cause was argued before GILBERT, C. J., and MASON and MACDANIEL, JJ.

*Stanley E. Baritz* for appellant.

*Barnett Rosenberg* for appellee.

MASON, J., delivered the opinion of the Court.

On this appeal we are asked to decide, among other things, whether the chancellor erred in awarding exclusive use and possession of the family home of the parties to appellee for her benefit and for the benefit of her minor child of a former marriage.

John Martin Strawhorn, appellant, and . Janet B. Strawhorn, appellee, were married in July of 1977 and separated in June of 1979. During this marriage no children were born or adopted. The parties lived together with appellee's son and appellant's stepson in the family home which they acquired in July of 1977. At the present time appellee receives $275.00 a month in child support payments from the father of the minor child.

In August of 1979 appellee filed suit for an absolute divorce from appellant on the ground of adultery. She also sought *pendente lite* and permanent alimony, counsel fees, and the use and possession of the family home. Appellant, on the other hand, filed a cross bill for an absolute divorce on the ground of adultery. A hearing was held before a domestic relations master on the *pendente lite* issues. The master recommended that Appellee be awarded use and possession of the family home, and that she be denied alimony and counsel fees. The *pendente lite* recommendations of the master were adopted by the chancellor in an order dated 7

January 1980. Subsequently, a hearing was held on the merits of the case and the chancellor in an order dated 17 July 1980 dismissed appellant's cross-bill and awarded appellee, among other things, an absolute divorce and the use and possession of the family home for a period of three years.

With respect to the use and possession award of the family home, appellant argues, in effect, that although he has no legal duty to support appellee's son of a former marriage, the use and possession award nevertheless imposes such a duty. That "it is a harsh result which deprives a man of his property to permit another man's child to remain in the house."

In response thereto appellee argues that the use and possession award only runs to the benefit of the spouse and is substantially the same as alimony inasmuch as it may not be continued if the spouse having use and possession of the family home remarries. Appellee argues further that the use and possession award was a proper exercise of discretion by the chancellor and that "while it is true that only certain categories of spouses are eligible for use and possession orders, namely spouses with children (be they children of the marriage or not) it is the spouse and not the children to whom the order runs."

The authority upon which the chancellor issued the use and possession award of the family home to appellee is section 3-6A-06 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland which, in relevant part, provides:

> (a) The authority conferred by this section shall be exercised to permit the *children of the family* to continue to live in the environment and community which is familiar to them and to permit the continued occupancy of the family home and possession and use of family use personal property by *a spouse with custody of a minor child who has a need to live in that home. . . .* In exercising its authority under this section, the court shall consider each of the following factors:

(1) The best interests of any minor child; (Emphasis supplied).

In *Pitsenberger v. Pitsenberger*, 287 Md. 20 (1980), the Court of Appeals lucidly delineated the purpose of section 3-6A-06 in the context of a *pendente lite* use and possession award:

> In enacting § 3-6A-06, the State's provision of pendente lite use and possession awards is intended to give special attention to the needs of minor children to continue to live in a familiar environment for the temporary duration of the pendente lite period. The procedure provided for in § 3-6A-06 seeks to avoid uprooting the children from the home, school, social and community setting upon which they are dependent, especially during the period of parental separation. During this period, due to the contentious behavior of the parents, the children have the greatest need for a stable environment to help them overcome the family instability.

*Id.* at 31-32.

> Section 3-6A-06 is designed to ensure that minor children need not suffer up to the point when grounds for a divorce may be proven. Because the main purpose of § 3-6A-06 is protection of the children's interests, the children must be permitted to reside in the family home regardless of the existence of probable grounds for a divorce.

*Id.* at 33. (Footnote omitted).

We think the statute makes it clear that custody of a minor child and a need to live in the family home are necessary prerequisites that must be satisfied before a spouse can be awarded use and possession of the family home. Here appellee satisfied the custody of a minor child requirement, and there was ample evidence in the record for the

chancellor to find a need by appellee and her child to live in the family home. This, however, does not end our inquiry.

Another issue, as we perceive it, is whether the word child as it appears in section 3-6A-06 means any child or is its meaning restricted to a child of the parties. A similar issue in a different context was considered by the Court of Appeals in *Brown v. Brown*, 287 Md. 273 (1980). There the question was whether the lower court could imprison a stepfather under the court's contempt power to enforce a contractual obligation incorporated in a divorce decree to support a stepchild. Article III, section 38 of the Maryland Constitution provides:

> Imprisonment for debt.
>
> No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for the support of an illegitimate child or children, or for alimony, shall not constitute a debt within the meaning of this section.

The stepfather argued, in essence, that he was not subject to incarceration under section 38, *supra,* for not supporting his stepdaughter because there was no legal duty, independent of his contractual obligations, to support her. In reversing the lower court which had adjudged the stepfather in contempt, the Court said:

> That the legal duty to support does not ordinarily encompass a stepchild is beyond doubt, and the authorities are legion to that effect. . . . And this is for good reason, for the foundation upon which the law imposes a duty of support upon parents does not similarly justify such a duty being placed upon stepparents. (Citations omitted).
>
> * * *
>
> [T]he obligation of the appellant here to support his stepchild is contractual, and consequently quite

different from a father's noncontractual duty to support his natural or adopted child. . . . [H]is agreement to aid in the support of his stepdaughter created nothing more than a debt for which the constitution affords him immunity from incarceration when he failed to discharge his contractual obligation.

In buttressing its interpretation of section 38 that the word "child" did not encompass stepchild, the Court observed:

[I]t has long been established that the 'popular conception of the meaning of the words "child or children" [of specific individuals] is "immediate offspring." *Billingsley v. Bradley,* 166 Md. 412, 419, 171 A. 351, 354 (1934). *See Ryan v. Herbert,* 186 Md. 453, 461, 47 A. 2d 360, 364 (1946); *Webster's Third New International Dictionary,* 388 (2d unabr. ed. 1961). Second, it has been stated that the word (child 'has two meanings in law: (1) in the law of . . . domestic relations, and as to descent and distribution, it is used strictly as the correlative of "parent," and means a son or daughter. . .'

\* \* \*

Finally, when the legislature intends that the word 'child' have other than its ordinary meaning, it generally defines explicitly the scope of the word as so used. *See, e.g.,* Md. Code 1959, 1976 Repl. Vol. 1979 Cum. Supp.), Art. 27, § 35A (child abuse); Md. Code (1957, 1979 Repl. Vol.), Art. 88A, § 45 (Aid to Families with Dependent Children).

*Id.* at 284-285. *See also* 59 Am. Jur. 2d Parent and Child § 3 (1971) where it is stated:

The word 'children' does not ordinarily include stepchildren or grandchildren. In a statute, it may include adopted children. But in a private instrument it is usually held not to include them unless a contrary intent appears, or unless a con-

trary construction is required by statutory definition.

(Footnotes omitted).

In the same vein, *see also Flores v. King,* 13 Md. App. 270 (1971) where this Court was requested to construe the word child in the wrongful death statute.[1] There it was argued that since the stepdaughter was completely dependent upon the decedent she should be allowed to assert a claim for her stepfather's death. In rejecting this contention, we said: "We are urged to judicially interpret the noun 'child' as used in the statute so as to include 'dependent stepchild.' We decline to do so. *Id.* at 273-274. . . . We think that had the legislature intended the word child to include stepchild it would have said so." *Id.* at 275.

Although the construction of the word child by the Court of Appeals in *Brown v. Brown, supra,* and this Court in *Flores v. King, supra,* would appear to militate against holding that the word child in section 3-6A-06 includes stepchild, the cardinal rule in the construction of a statute is to effectuate the real and actual legislative intent. *Atlantic Gulf & Pacific Co. v. Dept. of Assessments and Taxation,* 252 Md. 173, 177 (1964). The language of the statute is the primary source for determining this intent. *State v. Fabritz,* 276 Md. 416, 421 (1975), *cert. denied,* 425 U.S. 942 (1976).

The legislative history of the instant statute (Chapter 794, Laws of Maryland 1978, 2304, 2309) discloses that the original language in section 3-6A-06(A)(1) read: "The best interests of any minor children of the parties." The words "children of the parties" were subsequently deleted and substituted in lieu thereof was the word "child". We think this amendment clearly evinced a legislative intent not to limit the meaning of the word child to a child of the parties, but to expand the meaning of the word to embody any child of

---

1. Article 67, section 4 of the Annotated Code of Maryland. This article was replaced and recodified under Courts and Judicial Proceedings Article, section 3-904.

the family, including a stepchild. To hold otherwise, we would be usurping legislative power and destroying a legislative purpose by reinserting words into the statute that the legislature specifically deleted. *See Slate v. Zitomer,* 275 Md. 534, 540, *cert. denied,* 423 U.S. 1076 (1976). *See also,* Note *Property Disposition Upon Divorce in Maryland: An Analysis of the New Statute,* 8 U. Balt. L. Rev. 377, 388 n. 75 (1979) where it is stated: "The statute does not include a requirement that the child be a product of the marriage between two spouses involved in the divorce. Presumably, a child of either spouse by a prior marriage or even an unrelated child in the custody of a party, would be sufficient to permit a use and possession award."

For the foregoing reasons, we conclude that the chancellor neither erred nor abused his discretion in awarding the use and possession of the family home to appellee. Nor do we find, as argued by appellant, that the chancellor abused his discretion in awarding appellee the use and possession of the family home for a three year period following a nine month *pendente lite* use and possession award. Finally, because the issue was neither raised nor decided below, we need not determine whether the use and possession award of the family home to appellee for the benefit of her minor child, who appellant had no obligation to support, constituted an unconstitutional taking of appellant's property. Maryland Rule 1085. *See Pitsenberger v. Pitsenberger, supra,* at 33, 34.

In awarding appellee $200.00 a month in alimony, the chancellor observed:

> Mrs. Strawhorn seeks alimony and counsel's fee. It is undisputed that she suffers from a long-standing mental disorder that may have had its genesis during her formative years. She is presently receiving psychiatric care from Dr. Hirsche and he testified that she will be under treatment for a protracted period of time. While the plaintiff's present income and defendant's projected income are practically identical, I am persuaded

that an award of some alimony, albeit less than that sought, shall be made.

In determining an award of alimony, the chancellor should consider "the husband's wealth and earning capacity, the station in life of the parties, the assets and income of the wife, their ages, the physical conditions and ability to work, the length of time the parties lived together and circumstances leading to the divorce and the fault that destroyed the marital relationship." *Sody v. Sody,* 32 Md. App. 644, 658 (1976). *See also Waters v. Waters,* 191 Md. 436 (1948); *Quinn v. Quinn,* 11 Md. App. 638 (1971). "The controlling factors are the husband's overall financial ability to support (and not merely his current income) and the wife's need for support." *Quinn v. Quinn, supra,* at 643. Even though culpability can be considered in the granting or denying of alimony, alimony cannot be awarded strictly as a punitive measure since the sole object of alimony is to provide an allowance to the spouse "where income is insufficient to care for his or her needs, food, clothing, habitation and other necessities." *Id.* at 643. The fault that destroyed the marital relationship can be considered only as an element in the amount of alimony to be awarded when it affects the economic needs of the party seeking alimony. *Kingsley v. Kingsley,* 45 Md. App. 199, 209 (1980). In the present case the chancellor did not find that appellee's psychiatric problems stemmed from the fault that destroyed the marital relationship, nor did he find that these problems interfered with appellee's employment as a school teacher.

The financial statements submitted by the parties show that appellant's net monthly income was $1,276.00 and his expenses were $1,784.00. Appellee's net monthly income was $1,465.00 which included $275.00 a month in child support payments received from the father of her child. Her expenses, excluding those of her child, were $1,755.57. In addition to granting appellee $200.00 a month in alimony, the chancellor also ordered appellant to pay one-half of the mortgage payment on the family home, and one-half of the utility and insurance bills on the family home. According to

appellant after deducting the alimony payment of $200.00, the mortgage payment of $332.00, and the utility and insurance payment of $86.00 from his monthly income of $1,276.00, his net income would be reduced to $658.00 a month, whereas when this amount is added to appellee's monthly income, her monthly net income would be increased from $1,465.00 to $2,083.00 a month.

Although appellee may be entitled to alimony, the record does not reveal, nor did the chancellor clearly indicate the basis upon which it was granted. The use and possession award of the family home to appellee is akin to an award of alimony and child support and is inextricably tied to the needs of the child. In this case, appellant has no obligation to support the child other than indirectly by force of the use and possession award. Thus, this award plus the order requiring appellant to pay one-half of the monthly mortgage and one-half of the monthly utility and insurance payments were relevant factors which the chancellor should have considered in awarding alimony.[2] "The court should never make an award of alimony so excessive as to oppress or dishearten the husband. . . ." *Timanus v. Timanus,* 178 Md. 640, 643 (1940). Accordingly, we conclude that the award of alimony was excessive in relation to appellant's income and expenses. Therefore, we shall remand this case for further proceedings on the issue of alimony.

In awarding appellee $3,000.00 in counsel fees, the court said: "Mrs. Strawhorn also asked that her husband be ordered to pay her counsel fees invoking Article 16, section 5A of the Annotated Code. Counsel fees exceed Six Thousand Dollars ($6,000.00). In this instance, I conclude that a contribution of Three Thousand Dollars ($3,000.00) would be more than equitable." The test to be applied in awarding counsel fees was set forth by this Court in *Quinn v. Quinn,* 11 Md. App. at 652 (1971) as follows:

---

2. See Article 16, section 1(b)(1)(ii) of the Annotated Code of Maryland which provides that in awarding alimony the court should consider, among other things, "any award made under §§ 3-6A-05 and 3-6A-06 of the Courts and Judicial Proceedings Article."

Counsel fees should be awarded according to the ordinary factors of labor, skill, time, and benefit; and the amount of the fee cannot be wholly disassociated from the financial resources of the party charged. *Waters v. Waters, supra.* As stated in *Lopez v. Lopez,* 260 Md. 509, 520-521, in determining the amount of the counsel fee to be paid by the husband to the wife's solicitor, 'the court should take into consideration the financial circumstances of the parties, and determine the amount in accordance with the wife's necessities and the husband's financial ability, and allow an amount that will afford the wife an efficient presentation of her side of the controversy.'

*See Flanigan v. Flanigan,* 17 Md. App. 90, 97 aff'd. 270 Md. 335 (1973); *Carney v. Carney,* 16 Md. App. 243, 253 (1972). "[T]he sufficiency of the wife's income may, and ordinarily should be considered separately in relation to her needs for normal living expenses, and her needs for such extraordinary expenses as counsel fees for divorce litigation." *Von Bretzel v. Von Bretzel,* 10 Md. App. 512, 515 (1970). What constitutes a reasonable attorney's fee is within the sound discretion of the trial court and evidence of actual hours expended is not necessary. In *Foster v. Foster,* 33 Md. App. 73 (1976), this Court observed:

In determining the amount for a reasonable counsel fee, the ordinary factors of labor, skill, time and benefit, as well as the financial resources of the parties, must be taken into account. While time is one of the applicable factors, the record need not contain evidence specifically delineating the number of hours spent by counsel. Because the record itself discloses the nature of the proceedings, it is some evidence of the extent of the attorney's efforts. Given this evidence, the chancellor may rely upon his own knowledge and experience in appraising the value of an attorney's services.

*Id.* at 77. (Footnotes omitted).

The record here shows that appellee had incurred attorney's fees in the amount of $6,082.50 which represented approximately 81.1 hours spent by counsel at the rate of $75.00 per hour, and that appellee and her father had paid $2,845.84 of this amount. Under these circumstances we cannot say that the chancellor abused his discretion in ordering appellant to contribute $3,000.00 toward appellee's counsel fees.

Appellee also requests this Court "to award her additional attorney's fees together with costs, incurred by her on appeal." Inasmuch as the issue of additional attorney's fees to prosecute the appeal was not raised and decided below it will not be considered by this Court for the first time on appeal. Maryland Rule 1085. The Court of Appeals and this Court have repeatedly held that the trial court has jurisdiction to award counsel fees not only for the trial, but also for the prosecution of an appeal even after the appeal has been entered. *See Rhoderick v. Rhoderick,* 257 Md. 354, 359-362 (1970); *Jackson v. Jackson,* 272 Md. 107, 111-112 (1974); *Staley v. Staley,* 25 Md. App. 99, 111-114 (1975).

> *Order affirmed in part and reversed in part.*
> *Case remanded for further proceedings as to alimony in accordance with this opinion.*
> *Costs to be divided equally between the parties.*