524 A.2d 789

**Priscilla Gorfinkle BENKIN**

v.

**Isaac David BENKIN.**

**No. 678, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

May 6, 1987.

James G. Nolan (Sachs, Greenebaum & Tayler, on the brief), Chevy Chase, for appellant.

Howard S. Epstein (John P. Diuguid and Diuguid & Epstein, on the brief), Washington, D.C., for appellee.

Argued before WEANT, BISHOP and GARRITY, JJ.

BISHOP, Judge.

Priscilla Gorfinkle Benkin appeals from those parts of the Decree of the Circuit Court for Montgomery County, which, *inter alia,* granted her a monetary award in certain of appellee's pensions; granted her alimony for five years on a declining scale, to terminate on March 1, 1991; directed that, until the sale of the marital home, appellee pay all mortgage and other expenses except for utilities and minor repairs, which were to be paid by her; and designated certain property as marital property.

## FACTS

The court ruled that both parties were equally responsible for the dissolution of the marriage and granted appellant the absolute divorce. The court also made the following

findings as to the pertinent marital property at issue and its value:

Marital Property

| | |
|---|---|
| Family residence— 3506 Woodbine Street (net divisible equity) | $154,000.00 |
| Civil Service Pension— Present value | 190,000.00 |
| Military Pension— Present value | 56,000.00 |
| (appellant to share in pensions in accordance with Agreement of March 7, 1986) | |
| Household furnishings and other property located in the marital home | 18,000.00 |

Having determined that the family residence was marital property, the trial court found that the parties had agreed to divide that asset equally. With regard to the pensions, the parties agreed, after the trial and before the court filed its opinion and order, that the pensions were marital property and that any monetary award would come from the pensions. Consistent with this agreement, the court based the monetary award granted to Mrs. Benkin on her share of the pensions. During oral argument before this Court, the parties agreed that the monetary award was not an issue on appeal. Almost all of the household furnishings and personal property found in the marital home were deemed to be marital property.

Additional facts will be supplied in our discussion of Mrs. Benkin's four issues.

Appellant contends that the trial court erred when it:

I. Awarded alimony for a limited duration;

II. Awarded insufficient alimony;

III. Designated certain jewelry as marital property instead of as her sole property; and

IV. Designated a Tiffany bowl as marital property instead of as the property of their eldest child, Joshua.

## I.

### *Duration of Alimony*

Mrs. Benkin calls the five year alimony limitation "a gross inequity" and argues that indefinite alimony should have been awarded. After reviewing carefully the record below, we conclude that there is much merit to the wife's position and thus remand the case to the trial court for further consideration on this issue.

██ Maryland's 1980 Alimony Act constitutes "a comprehensive revision of Maryland's domestic relations law." *McAlear v. McAlear,* 298 Md. 320, 344, 469 A.2d 1256 (1984). Pursuant to the revised statute, the principal function of alimony shifted from maintenance of a spouse's standard of living to rehabilitation:

> [the] concept of alimony as a lifetime pension enabling the financially dependent spouse to maintain an accustomed standard of living has largely been superseded by the concept that the economically dependent spouse should be required to become self-supporting, even though that might result in a reduced standard of living.

*Harman v. Harman,* 61 Md.App. 554, 560, 487 A.2d 689 (1985) (quoting *Holston v. Holston,* 58 Md.App. 308, 321, 473 A.2d 459 (1984)). In determining the duration of an alimony award, the statute authorizes the trial court to award indefinite alimony if it finds as a fact that:

> (1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or
>
> (2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

MD.FAM.LAW CODE ANN. § 11–106(c) (1984). In reviewing a court's refusal to grant indefinite alimony, this Court applies the abuse of discretion standard. *Brodak v. Brodak,* 294 Md. 10, 28–29, 447 A.2d 847 (1982); *Nisos v. Nisos,*

60 Md.App. 368, 388, 483 A.2d 97 (1984); *Holston v. Holston*, 58 Md.App. 308, 324, 473 A.2d 459 (1984).

### Section 11–106(c)(1)

Although the statute is disjunctive, Mrs. Benkin relies on both prongs of section 11–106(c) to support her claim for indefinite alimony. As to the first prong, section 11–106(c)(1), Mrs. Benkin points to her longstanding arthritic condition as grounds for an award of indefinite alimony. She has been under the care of a rheumatologist since 1982. Further, she testified that one of the joints in her left hand has been fused because it had degenerated as a result of the arthritis. Despite treatment, the arthritis continues to cause pain and swelling in her wrist joints and at the base of her thumbs. Pain from arthritis in her left foot makes walking difficult. Her arthritic condition forces her to take medication daily and to receive an injection of gold every fourth week. She takes feldine, a non-steroid anti-flammatory drug used for the treatment of arthritis. To counteract the increase in her blood pressure caused by feldine, she must also take other medication. Mrs. Benkin adduced testimony from her friend, Sara Meizlik, that she has seen Mrs. Benkin's hand so swollen that the knuckles were not visible.

At its worst, Mrs. Benkin's arthritis causes her to be bedridden and requires her to take medicine to alleviate the pain. At the least, it causes her pain and robs her of strength in performing normally simple tasks: dressing or turning off a faucet have become chores; picking up a telephone book is painful; and because she cannot sustain her grip, she has a propensity to drop things.

Even if her physical disability does not prevent her from becoming "self-sufficient," Mrs. Benkin contends that her expected earning capacity will be so low that "the respective standards of living of the parties will be unconscionably disparate" pursuant to section 11–106(c)(2). Specifically, Mrs. Benkin asseverates that "there certainly is not any reason to believe that during the course of the next five

years [her] earning capacity will improve to any appreciable extent." To support this contention, she points out that she has not been employed on a full-time basis since 1960 and has enjoyed no substantial part-time employment between 1960 and January, 1985. She also suggests that she is not employable. She applied for jobs in July or August of 1984 with the American Humane Association, the National Governors Association, the Friends of Wildlife and Defenders of the Earth but received no job offers. Further, she answered employment advertisements in the Washington Post newspaper and applied for a job with the Department of Agriculture, both with negative results.

Appellee husband responds by arguing that the parties adduced sufficient evidence into the record indicating that Mrs. Benkin possesses the physical health and intellectual skills necessary to support herself with a standard of living that is not unreasonably disparate. In particular, he points out that appellant produced no medical, vocational or personnel expert testimony to support her argument that she is not capable of full-time employment. The husband also attempts to refute the wife's allegation of disability by referring us to "a videotape of appellant, running, lifting and performing other vigorous physical tasks while showing her dog." This coupled with the travel and physical activity required for appellant to attend numerous dog shows, according to appellee, belies any incapacitating disability. The videotape contains a recording of what appears to be a complete dog show. Although we could not identify appellant, the running and lifting we viewed could not be categorized as "vigorous" but rather as somewhat more strenuous than average normal exercise, such as walking. The tape displayed people capable of running slowly, trotting, perhaps several paces, lifting dogs that appeared to be about the size of terriers. We did not see what appellee refers to as "other vigorous physical tasks."

In reviewing the court's factual conclusions regarding the first prong, there was ample evidence to support the conclusion that the wife suffered from a serious arthritic

condition. The effects of her arthritic condition, however, remained in dispute. In addition to the videotape, the husband presented a significant amount of evidence that conflicted with the wife's position that her arthritic condition prevented her from being "self-supporting" pursuant to section 11–106(c)(1). The trial judge did not make an explicit factual finding on the issue of appellant's earning ability; however, in the five year limitation which he imposed on the payment of alimony there is an implicit finding that he resolved the conflict in the testimony in favor of the husband and found that, even though disabled to some extent, Mrs. Benkin's disability was not of sufficient magnitude to support the conclusion that solely due to her "infirmity or disability ... (she) cannot be expected to make substantial progress toward becoming self-supporting." MD.FAM.LAW CODE ANN. § 11–106(c)(1) (1984). *See also Mount v. Mount,* 59 Md.App. 538, 552, 476 A.2d 1175 (1984) (holding that it is sufficient if reviewing court can determine from a reading of the entire record and chancellor's opinion that he did consider those factors before making the alimony award); *Grant v. Zich,* 53 Md.App. 610, 618, 456 A.2d 75 (1983) (holding that in awarding alimony, the chancellor is not required to invoke expressly the wording of the statute to demonstrate that he considered the relevant factors), *aff'd,* 300 Md. 256, 477 A.2d 1163 (1984). Accordingly we hold that the trial judge did not err in denying alimony for an indefinite period under section 11–106(c)(1). We take a different view of this issue under (c)(2).

### Section 11–106(c)(2)

We read subsection (c)(1) of section 11–106 to mean that indefinite alimony may be awarded where, due solely to age, illness or infirmity, the party cannot reasonably expect "to make substantial progress toward being self-supporting." Subsection (2) presupposes that even after considering that the party seeking alimony has some earning ability and therefore will be able to make some progress toward

closing the gap between the unconscionably disparate standards of living, it is reasonable to expect that the gap will continue to be unconscionably disparate. *See Harman*, 61 Md.App. at 559–60, 487 A.2d 689; *Holston*, 58 Md.App. at 321–22, 473 A.2d 459.

Mrs. Benkin contends that her present earning capacity is significantly lower than the salary that her husband earns. Specifically, she points out that since January, 1985, she has worked for Borden, Inc., a firm that sells products used by those who handle show dogs; working part-time, this job yielded to her almost $11,000.00 in income in 1985. Because Dr. Barth, her rheumatologist, suggested she "pace herself," she argues that her income will remain constant. By contrast, she points out that Mr. Benkin has an annual salary of $68,700.00. This coupled with income from the Air Force, puts his annual income in excess of $70,000.00. Mrs. Benkin observes that she earns sixteen percent of that amount and that this disparity will never substantially diminish. Finally, she notes that even the trial judge in his opinion and order determined that her financial situation was "almost totally opposite" Mr. Benkin's.

In *Holston v. Holston*, 58 Md.App. 308, 473 A.2d 459 (1984), we found that the trial court abused its discretion in not awarding indefinite alimony to the then thirty-nine year old Mrs. Holston. 58 Md.App. at 323, 473 A.2d 459. We relied on the facts that Mrs. Holson had not worked since 1967, had attended college for only about a year and a half, and that her only work experience had been as a secretary at the University of Maryland Medical School, a post that yielded $5,000.00 in 1967 and, at the time of trial, $13,-000.00. By contrast, her husband was a dentist, a consultant and a professor at the Dental School. His income was over $85,000.00. *Id.* at 322–23, 473 A.2d 459. Having determined the parties' relative stations in life, we concluded that:

Even if appellant, re-entering the job market after fifteen years, would be able to gain employment at a similar salary, her earnings would be less than 15 per

cent those of appellee. There is nothing in the evidence to indicate that appellant would ever be able to eliminate or even substantially diminish such disparity. Assuming appellant used her three years of alimony to return to college, receive a degree and acquire a marketable skill, it is questionable whether after graduation she could earn a salary even approaching appellee's earnings. Compounding the difficulty of obtaining an education and a marketable skill is the necessity to provide and care for five minor children. Reading the record, we see no reason to expect that if alimony terminates after three years the respective standards of living of the parties would not then be "unconscionably disparate."

*Holston*, 58 Md.App. at 323, 473 A.2d 459.

At the other end of the indefinite alimony spectrum is the case of *Harman v. Harman*, 61 Md.App. 554, 487 A.2d 689 (1985), where we affirmed the chancellor's award of alimony for two years. In distinguishing *Holston* and *Harman*, we noted that Mrs. Harman had a nursing degree with which she could earn $15,000.00 to $20,000.00 per year as a nurse, but instead she held a position, while married, as a clerk typist with the federal government, with a wage of $11,000.00 per year. 61 Md.App. at 560–61, 487 A.2d 689. Unlike Mrs. Holston, Mrs. Harman had no children. Mrs. Benkin is not the secretary in *Holston*. In fact she is better educated than the nurse in *Harman* who opted for a lower paying position. Mrs. Benkin, fifty-one years of age at the time of trial and who will be fifty-six years of age when the alimony terminates, does have the problems associated with the current and future disabling effects of her arthritis. The husband argues that in spite of her academic credentials she breeds and shows dogs and promotes Borden Company products at dog shows, activities which are substantially below her employment potential. Also he points out that she lives not far from Washington, D.C., an area in which her lobbying skills could be readily utilized.

Mrs. Benkin points out, and the court agreed, that given the status quo of the employment of herself and her hus-

band, there is and will continue to be a large disparity in incomes. The question then is whether within the five years of the alimony payments, given Mrs. Benkin's age, her physical condition, her educational background and her past success in lobbying, can she not only become self-supporting but can she also make strides in closing the income gap between herself and Mr. Benkin to the extent that their respective standards of living will not be unconscionably disparate.

While we have disposed of the issue of Mrs. Benkin's qualifying for an indefinite alimony award based solely on "age, illness, infirmity or disability" under subsection (c)(1), we must now address the impact of her age, qualifications and whatever disability she might possess on her potential under (c)(2) to become self-supporting and to alleviate the unconscionable disparity in income. To what extent did the trial court consider this and other factors in arriving at the five year limitation? In his opinion and order, the trial judge wrote:

When considering whether to award alimony, the Court must take into account all of the relevant factors including those set forth in Maryland Family Law Code Section 11–106 (1984). The financial statements of the parties reflect a substantial disparity between the property holdings of the Plaintiff and those of the Defendant. This disparity will be significantly offset with the agreed to distributions of the residence and the pensions and the fees to be awarded.

Further, *Defendant will probably continue receiving his salary for some time to come. The situation with the Plaintiff is almost totally opposite.* For twenty-eight years, she ran the household as mother and homemaker while the Defendant supported her and the family in proper fashion.

Ordinarily, when divorce occurs, each party will experience a reduced standard of living. Notwithstanding the above stated distributions, the Court finds that Plaintiff's standard of living will decline much more appreciably

than the Defendant's. Though an award of alimony will not enable Plaintiff to live in the style to which she has become accustomed for over twenty-eight years, it is certainly an appropriate remedy nonetheless.

(emphasis supplied).

After finding that the disparity in basic property holdings of the parties will be offset by the distribution of the residence, the pensions and the fees to be awarded, the court then went on to find that the disparity in income would continue and that the wife's standard of living will decline much more than that of the husband's. The court then decided to make an award of alimony and subsequently ordered the five year declining payments set out below.

We have difficulty understanding how the wife's shares in the pensions, which consist of income that she will not receive for at least, in the one case, five years and, in the other, ten to twelve years, will effectively offset the disparity in the property holdings of the parties. Because the wife did agree that the monetary award should come from the pensions and, at oral argument both parties agreed that the monetary award was not an issue on appeal, we will not address this issue.

The issue of disparity in income is a different situation. Here the court found that the husband will receive "his salary for some time to come" while, at the same time, the court found that "the situation with (the wife) is almost totally opposite" and that the wife's "standard of living will decline much more appreciably than" the husband's. The court went on to find that while an award of alimony will not enable the wife to live as she did during the marriage, an award of alimony would be appropriate. The court followed this with the five year limitation order. From the record before us we are at a loss to find any basis for the five year limitation. The wife's income from one of the pensions will not begin for at least five years and from the other for ten to twelve years, according to a statement by the husband's attorney. There is nothing in the record as to the amount of periodic income the government pension

will generate to her. The Air Force pension will generate approximately $400.00 per month. While the wife's disability may not be sufficient to entitle her to alimony for an indefinite period under section 11–106(c)(1), clearly her age and her disability adversely affect her ability to earn income commensurate with her education and qualifications.

In the case *sub judice*, there are no minor children to be considered. Before her marriage to appellee, in 1958, Mrs. Benkin was awarded a Bachelor's Degree from Sarah Lawrence College and a Master's Degree in journalism from Boston University. She supported herself and the husband during the last year and a half of the husband's legal education at Harvard Law School and she was gainfully employed on a full-time basis for one additional year thereafter, while the couple lived in New York City. She terminated full-time employment after the birth of Joshua in May, 1961. Other than some miscellaneous part-time work in 1967 and 1968, Mrs. Benkin had not been gainfully employed outside of the home for almost twenty-five years. As the court found "for twenty-eight years she ran the household as mother and homemaker while (the husband) supported her and the family in proper fashion." The court might have added and "while the husband substantially increased his earning capacity."

■ Appellant, a fifty-one year old woman, virtually inactive in the job market for almost twenty-five years, suffers from arthritis, a progressive condition. She will be fifty-six years old when the alimony award terminates. Reentry into the job market for a woman of fifty-six years, even in excellent health, is problematic. The military pension will begin in about five years and will provide Mrs. Benkin with approximately $400.00 per month. The government pension probably will not begin for ten to twelve years. Although the trial court may not have erred in refusing to award alimony for an indefinite period of time under (c)(1), we find no basis in the record for the five year limitation on alimony under the (c)(2) standard. On remand, the chancellor should

consider and explain explicitly the reasons that favor or militate against an award of indefinite alimony under (c)(2).

In reaching this outcome, we are not requiring the trial court to order an award of indefinite alimony, although that may be the ultimate conclusion of the trial court, after taking into consideration all the factors that we have set out above. Rather, we hold that there must be some relation between the length of the award and the conclusion of fact as to the income disparity made by the court. It is clear from the record the wife's disability is real and must have some impact on her ability to earn a living, perhaps not a totally disabling impact which would qualify her for indeterminate alimony under (c)(1), but a substantial impact which requires that the disability and other factors including her age be considered under (c)(2).

## II.

### *Amount of Alimony*

■ The five year alimony award requires Mr. Benkin to pay Mrs. Benkin $750.00 per month the first year, $600.00 per month the second year and $500.00 per month the ensuing three years. Mrs. Benkin argues the amount of alimony is insufficient. There is nothing in the record to support a rationale for the declining amounts awarded. The court's finding both a current and a continuing disparity in the incomes of the parties not only fails to support the amounts awarded but, on the contrary, indicates something more is required as to the amount as well as the time limitation. While we are aware that the wife will receive her share of the proceeds from the sale of the residence, we do not believe that the trial court gave adequate consideration to the fact that upon the sale of the residence the wife will be required to pay for her own housing, since it will no longer be necessary for the husband to pay the $590.00 mortgage payment. In considering this issue on remand, it will be necessary for the court to consider the amount which the wife will be required to expend for housing.

We are aware that the trial court has broad discretion in setting an award of alimony. *Wallace v. Wallace,* 290 Md. 265, 282, 429 A.2d 232 (1981); *Brandon v. Brandon,* 66 Md.App. 214, 226, 503 A.2d 264 (1986) and that an alimony award will not be disturbed unless the court's discretion was arbitrary or "his judgment was clearly wrong." *Brodak v. Brodak,* 294 Md. 10, 28–29, 447 A.2d 847 (1982). Section 11–106(b), however, requires the chancellor, when determining the amount of alimony that a spouse must pay, to consider various factors, including:

(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

. . . . .

(8) the physical and mental condition of each party;

. . . . .

MD.FAM.LAW CODE ANN. § 11–106(b)(1), (2), (3) & (8) (1984). *See also McAlear v. McAlear,* 298 Md. 320, 347, 469 A.2d 1256 (1984); *Brodak,* 294 Md. at 28, 447 A.2d 847 (1982); *Strawhorn v. Strawhorn,* 49 Md.App. 649, 657, 435 A.2d 466 (1981); *Sody v. Sody,* 32 Md.App. 644, 658–60, 363 A.2d 568 (1976); *Quinn v. Quinn,* 11 Md.App. 638, 643–44, 276 A.2d 425 (1971). Although the court may have done so, the record does not support the conclusion that the court considered these relevant factors in arriving at the amount of alimony to be awarded. *Russell v. Russell,* 50 Md.App. 185, 188–89, 436 A.2d 524 (1981) (holding that chancellor's failure to consider statutory factors controlling alimony award required reversal).

■ The court may decide to award alimony for a limited duration while exercising its power to reserve as to indefinite alimony. In *Turrisi v. Sanzaro,* 308 Md. 515, 520 A.2d 1080 (1987), the Court of Appeals stated:

For example, facts before a court may demonstrate no present basis for either rehabilitative or indefinite alimony. But those same facts may show that a highly probable basis for awarding one or the other will exist in the immediate future. Under such circumstances, we see no reason why reservation would be inconsistent with the purposes of the Act. Indeed, under such circumstances, reservation would be consistent with the Act's overall purpose, as we defined it in *McAlear*, 298 Md. at 348, 469 A.2d at 1271: "The purpose of the 1980 Alimony Act is to provide for an appropriate degree of spousal support in the form of alimony after the dissolution of the marriage."

We hold, therefore, that the Alimony Act has not abolished the inherent power of an equity court to reserve jurisdiction as to alimony when it awards a divorce. *Id.* at 527, 520 A.2d 1080. While pointing out that reservation would not be proper based on remote possibilities, the Court set out the following limitations and possibilities:

Moreover, the Act itself suggests limitations on the chancellor's power to reserve. Section 11–106(b)(11)(ii) of the Family Law Art. includes as one of the factors to be considered in an award of alimony "any award made under §§ 8–205 and 8–208 of this article." Section 8–205 deals with monetary awards, and directs the court, in considering such an award, to weigh, among other factors "any award of alimony...." Section 8–208 deals with use and possession of the family home and family use personal property. The close relationship between alimony and monetary awards has often been recognized. *See, e.g., Campolattaro v. Campolattaro*, 66 Md.App. 68, 502 A.2d 1068 (1986), *Rosenberg v. Rosenberg*, 64 Md.App. 487, 497 A.2d 485 (1985) and *Holston v. Holston*, 58 Md.App. 308, 473 A.2d 459 (1984). If a case involves both a monetary award and alimony, reservation of alimony might be impracticable; at the very least, this situation would demand the most careful exercise of discretion. Similar problems may arise under § 11–110 (payment of

reasonable and necessary expenses) where one considera-tion is "the financial resources and financial needs of both parties." Section 11–110(c)(1). This may also implicate alimony.

On the other hand, there may be cases which do not involve monetary awards, family homes, or reasonable and necessary expenses, and in which grounds for divorce unquestionably exist. The case before us is one. If, in a case of this sort, the record contains evidence from which the chancellor could find that the claimant, in the reason-ably foreseeable future, will be in circumstances that would justify an award of rehabilitative or indefinite alimony, it would not be an abuse of discretion to reverse.

*Id.* at 529–30, 520 A.2d 1080. On remand, alimony will be the only substantive issue before the trial court, therefore, the chancellor may, if he finds the basis to do so, consider reservation in accordance with the guidelines set out above.

The chancellor has, of course, even without reservation, the power to modify the duration of the alimony under Md.Fam.Law Code Ann. § 11–107(a)(1) in the event there is a change in the circumstances "that would lead to a harsh and inequitable result . . .". In the case *sub judice,* this change in circumstances could be a deterioration of the wife's physical condition caused by progress of the arthritis so that the wife would be unable to continue even her present limited employment.

 Modification of the duration of alimony under the statute must be based on circumstances which arise during the period while the alimony is being received. Although the wife's arthritis is a current condition, the deterioration to which we refer above, would be a circumstance arising during the definite award period, which could be considered by the chancellor in modifying the definite alimony award by either an extension or a change to indefinite duration. As the Court held in *Brodak v. Brodak,* 294 Md. 10, at 29, 447 A.2d 847 (1982) "An award of alimony is always subject

to change if the circumstances, needs and the pecuniary conditions of the parties change." (citations omitted).

Since we are remanding the case for reconsideration of the alimony award, both as to duration and amount, and since the ultimate disposition of the alimony issue may have some effect upon the relative financial circumstances of the parties and therefore upon the basis for the monetary award, we normally vacate the monetary award so that the chancellor would have an opportunity to review that award in light of any changes that may take place in the alimony award. *See Holston v. Holston,* 58 Md.App. at 327, 473 A.2d 459. We will not vacate the monetary award in this case because, as we pointed out, the monetary award was the subject of an extra-judicial agreement between the parties, and one which, at oral argument, both conceded was not an issue on appeal.

## III.

### *Division of Property in the Marital Home*
### A.

#### *The Jewelry*

At trial Mrs. Benkin introduced an appraisal report into evidence on which were listed and valued almost all of the personal property at the parties' Chevy Chase home. Mrs. Benkin annotated this report by designating who, in her opinion, owned the specific pieces of jewelry. Of the 37 individual items of jewelry listed, valued at $7,076.00, Mrs. Benkin designated 36 pieces as her property and one $15.00 child's ring as the property of Mr. Benkin. In his opinion and order, however, the trial judge declared that all 37 pieces constituted marital property. At trial and here, Mrs. Benkin asserts that, with the one exception, the designated items of jewelry were her sole property.

Mrs. Benkin's annotations indicate the origin of the jewelry such as, "gift to wife from other," "gift to wife from

friend," "purchased by wife," "wife's property prior to marriage," and "gift to wife from third party."

By contrast, Mr. Benkin testified that he did not have a specific recollection of the circumstances under which most of the jewelry was acquired. He further testified that he and his wife would visit his father's retail jewelry store from time to time, especially when the couple lived in New York City where the store was located. He stated that the jewelry was obtained from his father either at a reduced price or without charge.

■ During oral argument the husband conceded that the engagement ring valued at $3,000.00 was a gift to the wife before the marriage and that the court should have designated it nonmarital property and as the wife's sole property. On remand we direct that the trial court award the ring to Mrs. Benkin as her sole property.

■ Under Md.Rule 1086, "the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." We have reviewed the record and hold that the court's finding as to all of the jewelry, except for the engagement ring, is not clearly erroneous, and, therefore, we will not disturb its ruling. *Brodak v. Brodak,* 294 Md. 10, 25–26, 447 A.2d 847 (1982); *Nisos v. Nisos,* 60 Md.App. 368, 388, 483 A.2d 97 (1984).

## B.

### The Tiffany Bowl

■ Finally, Mrs. Benkin asserts that the trial court erred in determining that a Tiffany bowl was marital property. She testified that the bowl was given by her mother to Joshua, the parties' eldest son, and, therefore, it belongs to Joshua. Consistent with Mrs. Benkin's testimony, Mr. Benkin also testified that the bowl was a gift by his in-laws to Joshua. On this point the trial court committed clear

**210**

error. The Tiffany bowl should be designated as the property of Joshua.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; ALIMONY AWARD AS TO TIME AND AMOUNT VACATED; CASE REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.