627 A.2d 17

**Frank Joseph DAVIS**

v.

**Patricia Lee DAVIS.**

**No. 1550, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

July 6, 1993.

Certiorari Granted Nov. 23, 1993.

2

Allen J. Kruger (Kruger, Kovelant & Hollmann, on the brief), Laurel, for appellant.

Naji P. Maloof and Debra B. Koehler, Upper Marlboro, for appellee.

Argued before MOYLAN, BISHOP and THAYER (FRED A., Specially Assigned), JJ.

BISHOP, Judge.

Appellant/Cross–Appellee, Frank Joseph Davis ("Mr. Davis"), filed a Complaint for Limited Divorce in the Circuit Court for Charles County against Appellee/Cross–Appellant, Patricia Lee Davis ("Mrs. Davis"). Mrs. Davis filed a Counterclaim for Absolute Divorce, Alimony, and Other Relief. The court granted Mr. Davis an absolute divorce, awarded Mrs. Davis $30,000, and granted other relief with respect to the Davises' property. The Davises filed timely notices of appeal.

### Issues

Mr. Davis raises one issue on appeal:

I. Whether the court had jurisdiction over the Davises' property after the expiration of the ninety-day period following the court's original order of absolute divorce, which was not extended by consent of the parties.

Mrs. Davis, as cross-appellant, raises the following issues:

II. Whether the court erred when it allowed the testimony and evidence proffered by Mr. Davis in support of his property claims where an earlier discovery order for sanctions ordered that all such matters were to be taken as established in accordance with Mrs. Davis's claims.

III. Whether the court erred when it failed to award attorney fees and costs to Mrs. Davis given Mr. Davis's recalcitrant attitude in failing to comply with discovery requests.

### Facts

The Davises were married on December 14, 1985, and they separated in early 1988. Mr. Davis filed a Complaint for Limited Divorce on July 29, 1988, and Mrs. Davis filed a Counterclaim for Absolute Divorce, Alimony, and Other Relief on August 15, 1988. Along with the counterclaim, Mrs. Davis propounded interrogatories and requested the production of certain documents.

After the deadline for Mr. Davis's answers to interrogatories and response to the request for production of documents passed, Mrs. Davis's counsel made several attempts—on October 31, 1988, December 15, 1988, and March 3, 1989—to contact Mr. Davis's counsel. Those attempts were futile. On April 13, 1989, Mrs. Davis's counsel filed a motion for sanctions, and, on April 19, 1989, the court ordered that Mr. Davis provide within fifteen days answers to the interrogatories and a response to the request for production of documents.

On May 30, 1989, Mrs. Davis filed a second motion for sanctions, in which she alleged that Mr. Davis provided the answers to interrogatories and response to request for production of documents after the expiration of the fifteen day period and that those answers and response did not comply with the Maryland Rules and were otherwise non-responsive, incomplete, and devoid of useful information. Upon consideration of Mrs. Davis's motion, the court, on June 20, 1989:

ADJUDGED, that [Mr. Davis's] Answers to Interrogatories fail[ed] to adhere to the form prescribed by Rule 2–421(b).

ORDERED, that [Mr. Davis] . . . provide complete discovery to [Mrs. Davis] within five (5) days.

ORDERED, that matters sought to be discovered by the Interrogatories and Request for Production of Documents be taken as established in accordance with [Mrs. Davis's] claims.

ORDERED, that [Mr. Davis] pay the costs and attorney's fees incurred in filing th[e second] Motion for Sanctions.

On February 28, 1990 (February 27, 1990 according to the docket entry, which appears to be incorrectly dated), Mr. Davis amended his complaint to seek an absolute divorce, and the trial court conducted an evidentiary hearing on the issue of the grounds for divorce. At the conclusion of the hearing, the following exchange took place:

THE COURT: The Court concludes, based on the testimony, that [Mr. Davis] has established grounds to grant to him a divorce absolute on the grounds that the parties have

lived separate and apart for the statutory period of more than two years. The Court reserves, however, the authority under the statute to make a marital award, if any, after hearing testimony on the property interest of the parties and that the parties will be entitled at that time to present any testimony that they desire to present on the issues or the factors that are to be considered by the Court in reaching a conclusion as to what award, if any, ought to be made. And those factors are listed in the statute, and therefore all parties are entitled to present any evidence they care to on the issues, including the cause of the breakup of the marriage.

MR. MALOOF [MRS. DAVIS'S COUNSEL]: Could we have a time reservation on that?

THE COURT: 90 days.

MR. MALOOF: And if we cannot get a date within that period, Your Honor—

THE COURT: Then the Court will extend it beyond the 90 days, if need be, but I would suggest—we ought to try to get this settled as soon as possible, so you just inform the assignment office that we need this to be heard within 90 days.

MR. MALOOF: Maybe we can go over there from here, Your Honor.

THE COURT: Yes.

The docket entry for that date (number sixty-nine) indicates that the court "grant[ed] Absolute Divorce to ... [Mr.] Davis from ... [Mrs.] Davis" and "reserve[d] authority to make marital award for ninety (90) days."

On May 8, 1990, the court conducted a discovery conference, at which the parties attempted unsuccessfully to settle the property dispute. In a letter to the court clerk dated May 25, 1990, Mrs. Davis's counsel requested that the case be set in for a hearing "as soon as possible." The letter was filed in the record on May 30, 1990, one day after the expiration of the ninety-day period following the February 28, 1990 hearing. The clerk set a September 28, 1990 hearing date.

On June 11, 1990, the court signed an order which reads:

This matter having come on for a hearing on the 28th day of February, 1990, and testimony and evidence having been taken herein, it is ...

ORDERED, that the Plaintiff, FRANK JOSEPH DAVIS, is hereby granted a Judgment of Absolute Divorce from the Defendant, PATRICIA LEE DAVIS; and it is further

ORDERED, that the Court reserves the authority to make a marital award, if any, after taking testimony and evidence on the property interests of the parties ...; and it is further

ORDERED, that the Court reserves the authority to take testimony and evidence on any and all other issues including alimony and the cause of the break-up of the marriage which exist by and between the parties.

A docket entry dated June 11, 1990 (number seventy-seven) reads: "Order for Judgment of Absolute Divorce filed and copy mailed Attorneys."

On August 2, 1990, the parties filed a "Joint Stipulation of Counsel" in which they consented, "as provided by the Annotated Code of Maryland Family Law Article, Section 8–203[,] ... to extend the ninety (90) days from the date of Absolute Divorce signed on June 11, 1990, within which the issue of marital property and property distribution would be reserved."

The court conducted a four-day evidentiary hearing, between September 28 and December 13, 1990, on the marital property issues. During the course of those proceedings, Mrs. Davis objected to Mr. Davis's attempts to offer evidence that he failed to provide her through discovery. Despite those objections and the prior court order for sanctions, the court admitted the evidence, but reserved its rulings on the objections. Apparently, Mr. Davis made similar objections, which were disposed of in the same fashion.

After the hearing concluded, the Davises filed motions to strike testimony. The court denied the motions. The court's order reads in pertinent part:

A Motion to Strike Testimony was filed by both parties in the above entitled case. Previous to the trial in this case, Judge Robert C. Nalley filed an Order granting sanctions to [Mrs. Davis]. The Order did not set forth the sanctions to be imposed and, accordingly, the Court will make an independent determination of the Motions to Strike Testimony.

There were objections made to testimony by counsel on both sides, based on the failure to comply with discovery requests. At the time of the objections, the Court overruled them and informed counsel that they could file Motions to Strike such testimony at the conclusion of the trial. Both sides have submitted their Motions.

After reviewing the file and spending several hours with counsel in negotiation before trial, and hearing the evidence produced by each side, it is the conclusion of this Court that the Motions to Strike Testimony by each side should be denied. This conclusion is reached because some of the information requested by each side to strike is evidence needed to make a decision about what is or is not marital property. Before trial, I spent several hours in settlement conference with both sides and conclude that each made available to the other all documents and information requested. It is my belief, therefore, that it would be unfair to both parties to strike the testimony requested.

On July 2, 1991, the court filed an opinion and order. The court awarded Mrs. Davis a $30,000 marital award and ordered Mr. Davis to pay court costs, but denied Mrs. Davis's request for alimony and counsel fees. The Davises filed motions to alter or amend judgment, both of which the court denied.

*Discussion*

I

A

Section 8–203(a) of the Family Law Article of the Annotated Code of Maryland (1991) provides:

*Time of court action.*—In a proceeding for an annulment or an absolute divorce, if there is a dispute as to whether certain property is marital property, the court shall determine which property is marital property:

(1) when the court grants an annulment or an absolute divorce;

(2) *within 90 days after the court grants an annulment or divorce, if the court expressly reserves in the annulment or divorce decree the power to make the determination; or*

(3) *after the 90–day period if:*

(i) *the court expressly reserves in the annulment or divorce decree the power to make the determination;*

(ii) *during the 90–day period, the court extends the time for making the determination; and*

(iii) *the parties consent to the extension.*

(Emphasis added). Mr. Davis argues that the court was without jurisdiction to grant the monetary award on July 2, 1991, because the parties did not consent to an extension of time before the expiration of the ninety-day period that commenced on February 28, 1990. In order to reach the merits of Mr. Davis's argument, we must first address the threshold question of whether the court "granted" Mr. Davis a divorce during the February 28, 1990 hearing.

■ Pursuant to § 8–203(a)(2), the ninety-day period during which the trial court may determine marital property begins to run from the date the court "grants" the divorce, if the court expressly reserves in the divorce "decree" the power to make such determination. Mr. Davis contends that the court entered the judgment for absolute divorce during the February 28, 1990 hearing, as reflected by the docket entry; thus, the ninety-day period began to run on February 28, 1990, the date the court granted the divorce. We disagree.

Rule 2–601 provides in pertinent part:

(a) **When Entered.**—Upon a general verdict of a jury or upon a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the

clerk shall forthwith enter the judgment, unless the court orders otherwise. *Upon a special verdict of a jury or upon a decision by the court granting other relief, the clerk shall enter the judgment as directed by the court....*

**(b) Method of Entry—Date of Judgment.**—The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. *That date shall be the date of the judgment.*

(Emphasis added). A judgment for absolute divorce is clearly in the nature of "other relief" as contemplated by this rule. Thus as conditions precedent to the entry of judgment for absolute divorce, the court must (1) direct the clerk to enter judgment, and (2) the clerk must enter judgment on the docket. The docket entry for February 27, 1990 clearly reflects that the *clerk* entered a judgment for absolute divorce; however, the first requirement was not satisfied.

In *Rohrbeck v. Rohrbeck,* 318 Md. 28, 566 A.2d 767 (1989), the Court of Appeals addressed the closely related issue of the characteristics which a ruling must have to be considered a final judgment for purposes of appeal. The Court explained:

If a ruling of the court is to constitute a final judgment, it must have at least three attributes: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md.Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md.Rule 2–601.

*Id.* at 41, 566 A.2d 767.

In the case *sub judice,* it is not necessary to determine whether the supposed judgment was final for purposes of appeal; however, it is necessary to determine whether it was a judgment at all. The first element of *Rohrbeck's* tripartite test requires that the court intend its action to be "an unqualified final disposition of the matter in controversy." Under

Rule 2–601(a) the court must direct the clerk to enter the judgment. If the court "indicates that a written order embodying the decision is to follow," the ruling from the bench will not be considered final. *Id.* at 42, 566 A.2d 767. In the case *sub judice,* the court did not indicate that a written order would follow.

We consider the language the court used to ascertain the court's intent. On February 28, 1990, the court did not "intend its ruling to be the final, conclusive, ultimate disposition of the matter[,]" *Rohrbeck,* 318 Md. at 41, 566 A.2d 767, or direct the clerk to enter judgment. The language used by the court does not indicate that the court made a ruling at all. The court merely "conclude[d], based on the testimony, that [Mr. Davis] ... established grounds to grant him a divorce absolute on the grounds that the parties ... lived separate and apart for the statutory period of more than two years." If a court declares, for example, " 'considering the present situation of [Bonnie], it would appear to us that the best interest of this child will be taken care of in the future. So, the Petition to Terminate *is granted* [,]' " then it can easily be said that the court intended its ruling to be an unqualified, final disposition of the matter. *Carroll County Dep't of Social Servs. v. Edelmann,* 320 Md. 150, 159–60, 577 A.2d 14 (1990) (emphasis added) (alteration in original); *see also id.* at 165, 577 A.2d 14. But when the court comments on its findings of fact and conclusion of law without making an express ruling, there is not "an unqualified, final disposition of the matter in controversy." Also, unless the record clearly indicates that the court directed the clerk to enter judgment, the clerk has no authority to do so. Our conclusion that the court's comments did not constitute the grant of an absolute divorce on February 28, 1990, is further supported by the fact that, on June 11, 1990, the court, by decree, "ORDERED, that the Plaintiff, FRANK JOSEPH DAVIS, *is hereby granted* a Judgment of Absolute Divorce from the Defendant, PATRICIA LEE DAVIS" (emphasis added). The language the court used on February 28, 1990, and the content of the decree, clearly establish that the divorce was granted on June 11, 1990.

On February 27 [28], 1990, the clerk erred when he entered the judgment for absolute divorce on the docket. That judgment should be reflected in the docket entry of June 11, 1990. Pursuant to Rule 8–414(a), we shall order the correction of those docket entries.

We need not consider the merits of Mr. Davis's argument. The Joint Stipulation of Counsel to extend the time for dealing with the marital property and property distribution issues was dated August 2, 1990, well within ninety days of June 11, 1990.

### B

Because of its practical importance, we will discuss briefly Rule 2–601. "A decree is defined to be a sentence or order of court determining the rights of matters in question according to equity, and ordering the parties accordingly. . . ." Edgar G. Miller, Jr., *Equity Procedure* § 259 (1897) (footnote omitted). It was a long-standing requirement in Maryland that decrees in equity be in writing, and signed by the Chancellor. *See Glass v. Glass*, 284 Md. 169, 171, 395 A.2d 485 (1978); *Eggert v. Montgomery County Council*, 263 Md. 243, 246–47, 282 A.2d 474 (1971); *Tvardek v. Tvardek*, 257 Md. 88, 99, 261 A.2d 762 (1970); *Sellman v. Sellman*, 238 Md. 615, 618, 209 A.2d 61 (1965) (per curiam). Although the cases do not suggest the underlying rational for this requirement, we are convinced that decrees were required to be in writing because of their complexity. Unlike the judgment in a law action, which ordinarily consists of an award for money damages and costs, the decree in equity "specifies what is to be done, when, how, where, by whom, and to or from whom." 27 Am.Jur.2d *Equity* § 250 (1966).

In *Rohrbeck, supra,* the Court of Appeals, in dicta, declared that the adoption of the 1984 version of the Maryland Rules, which merged law and equity procedure, and specifically the adoption of Rule 2–601, did away with the absolute requirement of a written decree in equity cases. The Court explained in a footnote:

As we have indicated, Rule 2–601 does not *require* a written order to be signed, even in complex decisions. [I]t is certainly the better practice to embody the terms of such decisions in a written order. The extemporaneous recitation of multiple or complex rulings from the bench may be fine for letting the parties and their attorneys know what the court's decision is in the case, but as it is the actual judgment that will govern the conduct, fortunes, and affairs of the parties, the court must be especially careful that the judgment itself is clear, complete, and precise. A written order prepared either by counsel . . . or by the court itself gives the court an opportunity to review the language, discover and correct any inadvertent imprecisions or inconsistencies, and generally assure itself that the judgment accurately reflects its decision. Upon the filing of a written order, the clerk need do no more than note on the docket that the order was filed and that judgment is entered in accordance therewith. The clerk is relieved of the burden of trying to recall and record what the court said, much less, where the extemporaneous remarks are unclear, of trying to figure out what the court meant.

If, for whatever reason, the court decides in such cases to dictate its decision from the bench and allow the clerk to enter the judgment based on the clerk's recollection of what the court said, the court as a matter of good practice should review the docket entry and assure itself that the entry accurately and adequately reflects the decision.

318 Md. at 46–47 n. 7, 566 A.2d 767 (emphasis in original).

This certainly appears to be what the Court of Appeals intended when it adopted Rule 2–601. We suggest, however, that the Rules Committee revisit the rule, particularly with respect to divorce decrees and other complex decrees in equity, and consider an amendment which would require that such decrees be in writing, and that the clerk not enter a judgment on the docket until a written decree is filed. An amendment to Rule 2–601 would not significantly change current practice—it is well-known that decrees in equity are almost always placed in writing before the judgment is en-

tered on the docket. The amendment, however, would add a degree of certainty in those cases where there is confusion as to what the intent of the judgment of the court is, and whether the court has directed the clerk to enter judgment. Obviously, this is vital to the parties in the filing of appeals, and the running of statutory periods such as the one provided in § 8–203(a)(2) that gave rise to the issue discussed, *supra.*

## C

Our conclusion that June 11, 1990 is the date on which the court entered judgment for absolute divorce renders Mr. Davis's argument regarding § 8–203 moot; however, at the same time, it requires that we consider another issue to which Mr. Davis refers in his brief. Mr. Davis contends that, if we determine, as we have, that June 11, 1990 is the operative date, then the court was without jurisdiction to grant the judgment for absolute divorce, because the testimony in support thereof was stale. Mr. Davis cites Rule S75(c), which provides:

*Stale Testimony.*

In an action for divorce, annulment, or alimony in which the testimony has been concluded for more than 90 days without entry of a final decree, a final decree may not be entered until supported by additional testimony justifying the conclusion that there has been no substantial change since the prior testimony was concluded.

We note preliminarily that Mr. Davis did not properly raise this issue in his brief. The issue was raised in the "Statement of the Case." There, Mr. Davis stated: "It should be noted that pursuant to Maryland Rule S75c [sic], the Court did not even have the jurisdiction to issue its June 11, 1990 Order." Mr. Davis then quoted the text of the Rule and concluded: "As is obvious, June 11, 1990 was more than 90 days after the February 27, 1990 [sic] hearing and no further testimony had been presented subsequent to February 27, 1990." The statement of the case is limited to a "brief statement ... indicating the nature of the case, the course of the proceedings, and the

disposition in the lower court." Rule 8–504(a)(2). We may disregard anything in that statement that constitutes argument. *See* Rule 8–504(c). We will, however, exercise our discretion and address the issue.

Rule S75(c) was addressed recently in *Noffsinger v. Noffsinger*, 95 Md.App. 265, 279, 620 A.2d 415 (1993). In that case, a master in chancery took testimony in July 1990, the court heard exceptions to the master's report over a year later, and another five and one-half months elapsed before the court entered judgment. We acknowledged that Rule S75(c) was violated. We held, however, that the error was waived because "[n]either party raised the issue of stale evidence or brought it to the attention of the court; neither party requested that additional evidence be taken; neither party moved to vacate, alter, or amend the judgement pursuant to Md.Rule 2–534, in order to comply with Rule S75(c)." *Id.* at 280, 620 A.2d 415.

■ Likewise, in the case *sub judice,* Mr. Davis did not raise this issue below. In spite of this, we conclude that he did not waive the issue for appellate review on that basis. In *Noffsinger,* there was no doubt as to when the court entered judgment. In this case, Mr. Davis proceeded under the erroneous assumption that February 28, 1990 was the date on which the court entered judgment. Although we held, *supra,* that June 11, 1990 was the operative date, the language the court used on February 28, 1990, coupled with the erroneous docket entry, created sufficient ambiguity to support our conclusion that Mr. Davis acted in good faith and neither knew, nor should have known, that Rule S75(c) was implicated. We nevertheless conclude that, although more than ninety days elapsed between the taking of testimony—February 28, 1990—and the entry of judgment—June 11, 1990, Mr. Davis is precluded on two other grounds from raising the issue on appeal. We explain.

1.

An appeal from a final judgment must be taken, if it all, by filing a notice of appeal within thirty days after entry of the

judgment. *See* Rule 8–202(a). In its order of June 11th, the court granted an absolute divorce and reserved authority to take testimony and evidence on the property interests of the parties and the cause of the break-up of the marriage in order to consider property distribution, alimony, and counsel fees. We will address the question of whether a judgment for absolute divorce is a final appealable judgment when the court reserves for later determination the issues of property distribution, alimony, and counsel fees.

In *Pappas v. Pappas,* 287 Md. 455, 413 A.2d 549 (1980), the trial court entered a decree granting an absolute divorce to Mrs. Pappas, and denied Dr. Pappas's bill for a limited divorce. "[T]he decree ... decide[d] 'less than all of the claims' before the trial court since it left open the amount of permanent alimony to be paid, the amount to be paid for child support, the sum to be paid for counsel fees, and the matter of division of the personal property and the monies of the parties." *Id.* at 463, 413 A.2d 549. Dr. Pappas appealed to this Court and, in an unreported opinion, we dismissed the appeal pursuant to Rule 605a, the predecessor to Rule 2–602. Rule 605(a) provided:

a. *When Entered—As to Part or All.*

Where more than one claim for relief is presented in an action, whether as an original claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims.

Current Rule 2–602(a) provides in pertinent part:

[A]n order or other form of decision ... that adjudicates fewer than all of the claims in an action ..., or that

adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

    (1) is not a final judgment;

    (2) does not terminate the action as to any of the claims or any of the parties; and

    (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

Because of the similarities between the former and current rules, the holding in *Pappas* is pertinent. The Court of Appeals affirmed the dismissal and held that "where the issue of property division, the amount of counsel fees, *and* the amount of alimony and support remain to be determined, the judgment was not final." 287 Md. at 463, 413 A.2d 549 (emphasis in original). The Court, however, chose not to decide "whether the reservation of the amount of counsel fees or the reservation of the amount of alimony and support without more would render the decree other than final." *Id.*

On January 1, 1979, § 3–6A–07(c) of the Courts and Judicial Proceedings Article went into effect. *See* 1978 Md.Laws 2311. It applied only to cases filed after January 1, 1979, however. *See id.* That section was recodified without substantive change in the Family Law Article, § 8–213(b). Section 8–213(b) provides:

    *Appeal.*—Any decree of annulment or of limited or absolute divorce in which the court reserves any power under this subtitle is final and subject to appeal in all other respects.

In *Parker v. Robins,* 68 Md.App. 597, 601, 514 A.2d 1237 (1986), we held that § 8–213(b) dictates that "any divorce decree which reserves only marital property issues is a final order and appealable pursuant to Courts and Judicial Proceedings Article § 12–301, which ... permits the appeal of a final judgment entered by a circuit court in a civil case." We must decide now whether the same is true of a divorce decree which also reserves issues of alimony and counsel fees.

The fact that, in *Pappas,* the Court held that a divorce decree was not a final appealable judgment because it left for future determination issues of marital property, support, alimony, and counsel fees, does not preclude us from holding that the divorce decree *sub judice* was a final judgment. The Court in *Pappas* did not consider the effect of § 3–6A–07(c), because in that case, the petition was filed prior to January 1, 1979. Further, the Court chose not to consider what effect a remaining alimony or counsel fee issue, without a marital property issue, would have on the finality of a divorce decree.

We hold that the divorce decree *sub judice* was a final appealable judgment. The parties' main objective was to obtain a divorce; the award of alimony and counsel fees was incidental to the divorce action, and the fact that those issues were reserved for later determination did not have the effect of rendering the divorce decree other than final. *Cf. Mattingly v. Shifflett,* 327 Md. 337, 343, 609 A.2d 329 (1992) (partial summary judgment on the issue of paternity held not to be a final appealable judgment, because it "left unresolved the primary purpose of [the plaintiff's] amended complaint: his attempt to secure visitation or custody"). Of course, under § 8–213(b) and our holding in *Parker, supra,* the remaining property issue had no effect on the finality of the decree. Mr. Davis did not file a notice of appeal until January 20, 1992, over nineteen months after the court entered the divorce decree; accordingly, he is precluded from challenging under Rule S75(c) the validity of that decree.

### 2.

This Court is without jurisdiction to consider this issue for yet another reason. Mr. Davis filed a "Motion for Reconsideration" ten days after the trial court's opinion and order of July 2, 1991 (docketed July 2, 1991), which disposed of the marital property, alimony, and counsel fee issues. In that motion, Mr. Davis contested the monetary award and requested that the court reconsider its judgment. Mr. Davis did not dispute the propriety of the divorce decree. Because Mr. Davis filed the motion within ten days of the entry of judg-

ment, the motion is treated as a Rule 2–534 motion to alter or amend judgment, and under Rule 8–202(c), the time for filing an appeal is stayed. *See Alitalia Linee Aeree Italiane v. Tornillo*, 320 Md. 192, 199–200, 577 A.2d 34 (1990).

On January 7, 1992, the trial court denied the motion for reconsideration. Mr. Davis filed a timely notice of appeal which read: "Please note that Plaintiff, Frank Joseph Davis files an Appeal to this Court's Opinion and Order dated January 7, 1992 and docketed the same date." Until recently, we may have considered the only issue before this Court to be whether the trial court abused its discretion when it denied Mr. Davis's motion for reconsideration. In *B & K Rentals and Sales Co. v. Universal Leaf Tobacco Co.*, 319 Md. 127, 571 A.2d 1213 (1990), however, the Court of Appeals decided that limiting language in a notice of appeal should be deemed surplusage and ignored. *See Krikstan v. Krikstan*, 90 Md. App. 462, 465–66, 601 A.2d 1127 (1992). Under the holding of *B & K Rentals*, this Court has jurisdiction to consider the property issue Mr. Davis raises on appeal. A close examination of *B & K Rentals*, however, leads us to the conclusion that we do not have jurisdiction to consider the issue related to the validity of the June 11, 1990 divorce decree, because Mr. Davis did not challenge that decree in the motion for reconsideration. We explain.

In *B & K Rentals*, the jury returned a verdict for the plaintiff, but the trial court granted defendant's motion for judgment notwithstanding the verdict. Within ten days, the plaintiff filed a motion for reconsideration and motion for new trial. After the trial court denied plaintiff's motions, the plaintiff filed a timely notice of appeal which stated:

> "It is respectfully requested that you enter an appeal to the Court of Special Appeals on behalf of B & K Rentals & Sales Co., Inc., Plaintiff, from this Court's Order denying Plaintiff's Motion for Reconsideration and Motion for New Trial, entered in this action on February 17, 1987."

319 Md. at 129, 571 A.2d 1213. The Court of Appeals concluded that the only final appealable judgment in the case was the February 17th order denying the plaintiff's motions. *Id.* at

132, 571 A.2d 1213. The Court determined, however, that the appeal from that judgment also "subjected the January 19th 'judgment' to review on appeal." *Id.* The Court explained that, under Rule 8–131(d), an appeal from a final judgment ordinarily brings up for appellate review all earlier orders in the case. *Id.* at 132–33, 571 A.2d 1213.

> [T]he current Maryland Rules do not require that a notice of appeal designate the order or judgment from which the appeal is taken. In fact, the present and prior rules of procedure in this State have not regulated the content of a notice of appeal or an "order for appeal" as it was formerly called. Therefore, Maryland cases usually have construed notices of appeal liberally and have ignored limiting language in notices of appeal, deeming it surplusage. The cases have taken the position that the purpose of a notice or order of appeal is not to designate or limit the issues on appeal. Instead, the designation of issues on appeal is a function of the information report required by Rule 8–205, the prehearing conference under Rule 8–206(b), and the briefs.

*Id.* at 133–34, 571 A.2d 1213.

The case *sub judice* may be distinguished from *B & K Rentals.* In *B & K Rentals,* the motion for reconsideration challenged the court's grant of the motion for judgment notwithstanding the verdict. That motion, of course, went to the merits of the entire action. In the instant case, the motion for reconsideration challenged only the marital property distribution. Mr. Davis did not challenge the validity of the divorce decree, a matter completely collateral to the marital property issue. Thus, that issue is not properly before us. We do not have jurisdiction to consider an issue on appeal where the appellant appeals from the court's denial of a motion to alter or amend judgment, and that motion challenged only a completely collateral matter.

## D

In a final effort to persuade this Court to reverse the trial court's monetary award, Mr. Davis argues that Rule

S75(c) renders invalid the award, because the court entered its final decree on July 2, 1991, over six months after the conclusion of testimony on the marital property issues. We disagree. Rule S75(c) clearly applies only to actions for "divorce, annulment, or alimony." Had the Court of Appeals intended that this rule apply to hearings on marital property issues, it would have said so.

## E

Even if we were persuaded that February 28, 1990 was the date judgment was entered, we would nevertheless hold that § 8–203 is not jurisdictional in nature, and the question of its applicability was neither raised in nor decided by the trial court. Accordingly, Mr. Davis failed to preserve this issue for appellate review. We explain.

In *Russell v. Russell,* 50 Md.App. 185, 187, 436 A.2d 524 (1981), we held that § 8–203's predecessor was jurisdictional in nature, and the court's failure to designate the marital property within the ninety-day period rendered "any determination thereafter ... nugatory." We made clear that the parties "could not confer jurisdiction by consent where the jurisdiction did not exist under the appropriate law." *Id.*

In *Brodak v. Brodak,* 294 Md. 10, 14, 447 A.2d 847 (1982), however, the Court of Appeals overruled our holding in *Russell.* The parties in *Brodak* presented evidence to the chancellor within the ninety-day period, but the chancellor failed to designate the marital property until the ninety-first day. The Court held that, although the word "shall" in § 8–203's predecessor was mandatory, the statute was not jurisdictional. The Court concluded that the "sanction of refusal to designate the marital property which, in turn, resulted in the loss of a monetary award was inappropriate because the arbiter (the [chancellor] ) caused the delay. Hence, *Brodak* established a test of fault." *Ticer v. Ticer,* 63 Md.App. 729, 734, 493 A.2d 1105 *cert. denied,* 304 Md. 300, 498 A.2d 1186 (1985). "[W]here no determination is made within 90 days and the fault does not lie solely with the arbiter, imposition of the

sanction that prohibits the court from acting is proper." *Id.*
63 Md.App. at 735–36, 493 A.2d 1105.

Rather than bringing to the attention of the trial court the
alleged noncompliance with § 8–203, Mr. Davis, on August 2,
1990, entered into a joint stipulation with Mrs. Davis. Mr.
Davis acknowledged that June 11, 1990, not February 28,
1990, was the date from which the ninety-day period began to
run, and consented to extend the ninety-day period within
which the issues of marital property and property distribution
would be determined. Further, Mr. Davis sat idly by while
the court conducted a four-day hearing. Now, after the court
awarded Mrs. Davis $30,000, and Mr. Davis is presumably
unhappy with that award, he attempts to ambush the court by
arguing that the court was without jurisdiction to make a
marital property determination. As discussed, *supra,* § 8–203
is not jurisdictional in nature, and thus, it was incumbent upon
Mr. Davis to raise the issue below, and allow the court to
make a determination. Having failed to raise the issue below,
Mr. Davis is precluded from raising the issue on appeal. *See*
Rule 8–131(a); *Harmony v. State,* 88 Md.App. 306, 316–17,
594 A.2d 1182 (1991) (statute of limitations argument was
neither raised in nor decided by trial court, and therefore, the
issue was waived).

## II

In Mrs. Davis's cross-appeal, she first argues that the court
erred when it admitted into evidence testimony and docu-
ments that Mr. Davis deliberately failed to provide pursuant
to discovery requests and for which sanctions had previously
been imposed. She contends that the record is replete with
examples of Mr. Davis's recalcitrance in providing discovery,
and that the court abused its discretion when it overruled
objections to the evidence and denied her motion to strike.

"[A]mong the basic objectives in providing for discovery is
'to require disclosure of facts by a party litigant to all of his
adversaries, and thereby to eliminate, as far as possible, the
necessity of any party to litigation going to trial in a confused

or muddled state of mind, concerning the facts that give rise to the litigation.'" *Kelch v. Mass Transit Admin.*, 287 Md. 223, 229, 411 A.2d 449 (1980) (*quoting Klein v. Weiss*, 284 Md. 36, 55, 395 A.2d 126 (1978)). In Maryland, "a trial judge has a large measure of discretion in applying sanctions for failure to adhere to the discovery rules." *Mason v. Wolfing*, 265 Md. 234, 236, 288 A.2d 880 (1972); *see also* Rule 2–433. That discretion will not be disturbed on appeal absent an abuse. *See Braxton v. Faber*, 91 Md.App. 391, 397, 604 A.2d 543 (1992); *Billman v. Maryland Deposit Ins. Fund Co.*, 86 Md.App. 1, 9, 585 A.2d 238, *cert. denied*, 323 Md. 1, 590 A.2d 158, *cert. denied*, —— U.S. ——, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991).

Mrs. Davis claims that the court abused its discretion by *not* imposing sanctions for various discovery violations—sanctions previously imposed by order of court. The court admitted, over Mrs. Davis's objections, testimonial and documentary evidence during the hearing on the property dispute. Mrs. Davis argues she was "at a distinct disadvantage in being able to either present her case affirmatively with regard to property issues or to rebut the evidence provided by the Appellant." Mrs. Davis does not, however, state how the court's property disposition determination or marital award would have differed had it granted her motion to strike.

It is well-settled that "the appellate courts of this State will not reverse a lower court judgment for harmless error: the complaining party must show *prejudice* as well as error." *Harris v. David S. Harris, P.A.*, 310 Md. 310, 319, 529 A.2d 356 (1987) (emphasis in original) (citation omitted). Even if we assume, *arguendo*, that the court abused its discretion when it admitted evidence that was not supplied Mrs. Davis during discovery, Mrs. Davis has not explained how this influenced the outcome of her case. Absent an affirmative showing of prejudice, we decline to reverse.

Further, Mrs. Davis did not include relevant portions of the trial transcript, or the alleged incomplete discovery material, in the appendix to her brief. *See* Rule 8–501(c).

Mrs. Davis directs our attention only to the trial transcript, and various docket entries, motions, orders and memoranda. We are unable to determine, from those references, whether the court abused its discretion, and if it did, whether the outcome would have differed had the court excluded the evidence. Thus, Mrs. Davis waived this issue for consideration. *See* Rule 8–501(1); *Shell Oil Co. v. Ryckman,* 43 Md.App. 1, 4, 403 A.2d 379 (1979) (appellate court may choose not to address contention where party fails to include evidentiary support in record extract); *Eldwick Homes Assoc. v. Pitt,* 36 Md.App. 211, 212, 373 A.2d 957 (appellate court is "not required to ferret out from the record those materials which counsel should have printed in the [record extract]"), *cert. denied,* 281 Md. 736 (1977).

We have, however, exercised our discretion and reviewed relevant portions of the trial transcript and the alleged incomplete discovery material. We cannot conclude that the trial court abused its discretion. The court's order on the motions to strike makes clear that the court considered the matter carefully and determined that "some of the information requested by each side to strike is evidence needed to make a decision about what is or is not marital property." Further, the court "spent several hours in settlement conference with both sides and conclude[d] that each made available to the other all documents and information requested." We agree.

### III

Mrs. Davis also argues that the court erred when it failed to award attorney's fees and costs in connection with her claim for alimony, especially in light of Mr. Davis's recalcitrant attitude in failing to comply with discovery requests. We note, preliminarily, that the court did, in its opinion and order filed July 2, 1991, order that Mr. Davis "pay the costs of this proceeding." Therefore, we consider only Mrs. Davis's claim concerning the award of attorney's fees.

A court may award to a party who brings or defends an action for alimony reasonable and necessary counsel fees after

considering (1) "the financial resources and financial needs of both parties" and (2) "whether there was substantial justification for prosecuting or defending the proceeding." Md.Fam. Law Code Ann. § 11–110(c) (1991). "The amount of the attorney's fees award is within the discretion of the chancellor. Although that discretion is subject to review by this Court, we will not disturb the award unless that discretion was exercised arbitrarily or the judgment was clearly wrong." *Broseus v. Broseus,* 82 Md.App. 183, 200, 570 A.2d 874 (1990).

Mrs. Davis cites *Gravenstine v. Gravenstine,* 58 Md.App. 158, 182–83, 472 A.2d 1001 (1984), for the proposition that when the party opposing an award of counsel fees has caused the generation of fees for the moving party because of his or her recalcitrant behavior with regard to discovery, the appellate court is more willing to invade the trial court's discretion to insure that equity is done. That, however, is only one factor for the court to consider, and cannot be viewed in isolation. The court must also consider the two express statutory factors noted above. Based on the scant record before us, we are unable to conclude that the court abused its discretion when it denied Mrs. Davis's request for counsel fees.

Mrs. Davis also contends that the court erred by failing to award attorney's fees and costs in connection with her second motion for sanctions. Mrs. Davis relies on the court's order "that [Mr. Davis] pay the costs and attorney's fees incurred in filing th[e second] Motion for Sanctions."

Rule 2–433 provides in pertinent part:

(c) **Award of Expenses.**—If a motion filed under Rule 2–432 or under Rule 2–403 is granted, the court, *after opportunity for hearing,* shall require the party or deponent whose conduct necessitated the motion or the party or the attorney advising the conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified

or that other circumstances make an award of expenses unjust.

(Emphasis added). Implicit in this rule is the requirement that the moving party, Mrs. Davis, include in the motion for sanctions a request for expenses—which was done, *and the amount of expenses requested supported by an itemization of those expenses—which was not done.* After the court ordered the payment of expenses, Mrs. Davis should have, at a minimum, filed an affidavit or other declaration that specified the expenses incurred in obtaining the order. Our review of the docket entries does not reveal that any such document was in fact filed. Having failed to do so, Mrs. Davis cannot, on appeal, be heard to complain that the court failed to award a sum certain in expenses in connection with the second motion for sanctions.

**JUDGMENT AFFIRMED; COSTS TO BE DIVIDED EQUALLY.**

**ORDERED THAT THE CLERK OF THE CIRCUIT COURT FOR CHARLES COUNTY CORRECT DOCKET ENTRIES SIXTY–NINE AND SEVENTY–SEVEN IN AC-CORDANCE WITH THIS OPINION.**